2025 UT App 33

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
COREY COLEMAN,
Appellant.

Opinion
No. 20230707-CA
Filed March 6, 2025

Eighth District Court, Vernal Department
The Honorable Clark A. McClellan
No. 191800295

David M. Corbett, Attorney for Appellant

W. Anthony Wilcox, Attorney for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

OLIVER, Judge:

¶1 Corey Coleman was a building official for Vernal City (City). In 2017, Coleman resigned from his position. Two years later, during litigation regarding an employment discrimination claim he brought against the City, Coleman turned over photographs he had taken of City records during his employment. When the State learned that Coleman had kept photographs of City records, it charged him with violating a Utah criminal statute captioned, "Stealing, destroying or mutilating public records by one not a custodian," a class A misdemeanor. A jury convicted Coleman, and he now appeals the district court's denial of his motion to arrest judgment, arguing that the statute only criminalizes actions with respect to original City records and does not criminalize merely keeping photographs of City records. We reverse the district court's denial of Coleman's motion to

arrest judgment without deciding whether the statute criminalizes keeping photographs of City records because Coleman presented a plausible basis for reversal and the State failed to respond to his arguments on appeal.

BACKGROUND[1]

*Resignation from the City*

¶2 Coleman was a building official who worked for the City from 2011 to 2017. After giving notice that he was resigning, his last two weeks with the City were from May 1 to 12, 2017. Prior to his resignation, Coleman filed complaints with various state and federal agencies concerning his employment with the City. As part of the subsequent litigation stemming from one of the complaints, Coleman was required to provide discovery to the City. The documents Coleman turned over to the City included photographs he had taken of City records while still an employee.

¶3 Upon learning that Coleman had photographs of these documents in his possession, the State charged Coleman with "Stealing, destroying or mutilating public records by one not a custodian," which is "a class A misdemeanor." *See* Utah Code § 76-8-413 (2023).[2] The case proceeded to a jury trial.

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Smith*, 2024 UT App 82, n.1, 550 P.3d 1030 (cleaned up).

2. The legislature amended the statute in 2024, adding explanatory language and subsections. *See* Utah Code § 76-8-413. Because Coleman was convicted under the prior version of the statute, and because neither party asks us to apply the amended version, we consider the prior version in this appeal.

*The Trial*

¶4 At trial, the State argued that Coleman violated the statute by making photographs and photocopies of City records and keeping them after his employment ended. It presented testimony from three witnesses who were employed by the City: a recorder (Recorder), an assistant manager (Manager), and an administrative secretary (Secretary). Recorder testified that in the last two weeks of Coleman's employment, Coleman was making copies of records on the copy machine just outside Recorder's department. Coleman typically used the copy machine around once a week, but Recorder testified that during Coleman's last two weeks, she saw him at the machine or heard the machine operating two to three times a day.

¶5 Manager testified that he shared an adjoining office wall with Coleman and recalled Coleman being in the office the first five days of May. He testified that he did not give Coleman permission to take photographs of any City records.

¶6 Secretary testified that she also noticed Coleman "constantly" making copies during his last week and that he did not do any building inspections or approve building applications during that time. According to Secretary, this was out of character for Coleman. Secretary further testified that one day when walking back from lunch, she saw Coleman's car parked by the office building and his trunk was open. In the trunk, she noticed a box full of green hanging file folders. These green folders were filled with manila folders that were themselves filled with documents, but Secretary testified that she did not actually see any of the documents in the box. Later, Coleman's wife returned the box with the green folders, which Secretary assumed was the same one she saw in Coleman's car. Secretary counted the green file folders and found there were 101 of them, but none of the manila folders or documents that were previously inside were there.

¶7 Taking the stand in his defense, Coleman admitted to making and keeping photographs of City records, but he maintained that none of the photographs he had were original documents and the photographs were taken "well before" his last two weeks on the job. He also testified that the documents he took home in the box in the trunk of his car were his personal copies of various manuals and technical specifications. He also testified that he could not have been seen or heard making copies at the office because he was away for most of his last two weeks due to travel both in- and out-of-state for prior work-related commitments.

¶8 In closing, the State argued, "what we're really looking at is removing or secreting [documents under the statute]." The State pointed to witness testimony that Coleman "was at the copy machine a whole bunch more than normal" and Coleman's testimony where he admitted he "took those photos" and kept them when he left his employment.

¶9 Coleman's counsel argued in closing that having photographs of the records was not the same as removing or secreting the records themselves. He specifically argued that the words in the statute do not say "that reproduction is prohibited or photographs are prohibited. It says stealing documents is prohibited." He further argued that Coleman made the photographs to document what he believed was fraud and that Coleman was not in the office every day during his last two weeks of employment when witnesses testified they saw him at the copy machine.

¶10 The jury convicted Coleman as charged. The district court sentenced him to a suspended jail sentence of one year, ordered him to pay a fine of $1,960, and placed him on probation for eighteen months.

*The Motion to Arrest Judgment*

¶11   After his conviction, Coleman filed a motion to arrest judgment. He argued that Utah Code section 76-8-413 did not prohibit making or keeping photographs or copies of public records and, instead, only applied to originals. According to Coleman, he did not commit the crime he was convicted of because he did not engage in conduct prohibited by the statute. The court denied the motion and emphasized "it was reasonable for the jury to conclude that taking and retaining a photograph of public documents" and keeping it after employment with the City ended "could constitute 'stealing, removing or secreting'" under the statute. The court did "not believe that it should attempt to substitute its judgment for that of the jury."

ISSUE AND STANDARD OF REVIEW

¶12   Coleman asserts that the district court erred in denying his motion to arrest judgment. This is a legal determination we review for correctness. *State v. Camara*, 2023 UT App 106, ¶ 12, 537 P.3d 1017, *cert. denied*, 547 P.3d 827 (Utah 2024).[3]

ANALYSIS

I. Motion to Arrest Judgment

¶13   Coleman argues that the district court should have granted his motion to arrest judgment because the plain language of Utah Code section 76-8-413 (2023) only regulates conduct with respect

---

3. Coleman raised two additional issues on appeal: a challenge to the district court's denial of his motion for a new trial and claims of ineffective assistance of counsel. Because we reverse on the issue of the motion to arrest judgment, we need not address these additional issues.

to actual records and does not criminalize making or retaining copies of records.[4] "A district court may arrest a jury verdict when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element." *State v. Camara*, 2023 UT App 106, ¶ 12, 537 P.3d 1017 (cleaned up), *cert. denied*, 547 P.3d 827 (Utah 2024). Because the State presented no evidence at trial that Coleman took original documents, and instead only presented evidence that Coleman copied records and retained those copies, Coleman maintains that the district court erred in denying his motion to arrest judgment.

¶14 In response to Coleman's argument on appeal, the State argues that the evidence presented at trial was sufficient to convict Coleman. It also acknowledges that Coleman only removed or secreted copies of records, not the original records themselves. Despite this acknowledgment, the State makes no effort to engage with Coleman's argument that the statute does not criminalize taking copies of records. When appellees fail to brief an argument raised by an appellant on appeal, "they do so at their own peril" because when "the appellant's arguments stand unrebutted . . . we then review them with a lower standard than the typical burden of persuasion on appeal." *Musselman v. Keele*, 2024 UT App 143, ¶ 19, 559 P.3d 64 (cleaned up); *see also Mitchell v. Arco Indus. Sales*, 2023 UT App 70, ¶ 22, 533 P.3d 394, *cert. denied*, 537 P.3d 1016 (Utah 2023); *cf. State v. Amboh*, 2023 UT App 150, ¶ 16, 541 P.3d 299 (applying this rule in the criminal law context). Therefore, we will address Coleman's claim "through the lens of this lower standard of review." *Amboh*, 2023 UT App 150, ¶ 20. Under this lower standard of review, "it is appropriate to rule in favor of an appellant if the appellant establishes a prima facie showing of a plausible basis for reversal." *Mitchell*, 2023 UT

---

4. For ease of reference, we include both photographs and photocopies in the term "copies" in our analysis.

App 70, ¶ 22 (cleaned up); *see also Zions Bancorporation, NA v. Schwab*, 2023 UT App 105, ¶ 16, 537 P.3d 273 (reversing the district court's decision where the appellant presented "an interpretation of the [statute] that is at least plausible").

A.     The Plain Meaning of Utah Code Section 76-8-413 (2023)

¶15     When an appellate court is "faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose of the legislature. The best evidence of the legislature's intent is the plain language of the statute itself." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up).

¶16     Coleman first argues that the plain language of the statute only regulates actual records, not copies. Under the statute, a person who is not a custodian commits a class A misdemeanor for "stealing, destroying or mutilating public records" when they have "custody of any record, map, or book, or of any paper or proceedings of any court, filed or deposited in any public office, or placed in his hands for any purpose" and are "guilty of stealing, willfully destroying, mutilating, defacing, altering, falsifying, removing, or secreting the whole or any part thereof." Utah Code §§ 76-8-412 to -413 (2023). According to Coleman, because there is no mention of copies in the text, the statute applies only to original documents and not to copies of such documents.

¶17     Coleman next argues that the plain language of the statute "does not prohibit copying or retaining copies." He asserts that variations of the words copying or retaining are nowhere in the statute and neither are any synonyms. Instead, the statute criminalizes only "stealing, willfully destroying, mutilating, defacing, altering, falsifying, removing, or secreting the whole or any part thereof." *Id.* § 76-8-412. He argues that under the noscitur a sociis canon, a rule of statutory interpretation, "a word is known by the company it keeps" and that when read in harmony and in

light of this doctrine, the words show intent to criminalize conduct that goes further than merely copying or retaining those copies. *See State v. Camara*, 2023 UT App 106, ¶ 25, 537 P.3d 1017 ("[W]e utilize [the noscitur a sociis canon] to give words grouped in a list related meanings."), *cert. denied*, 547 P.3d 827 (Utah 2024). Coleman asserts that when "[r]ead together, the terms all describe conduct that modifies, conceals, destroys or removes records so that they cannot be found or read in their original state." He thus concludes that because copying and retaining those copies does "not affect the integrity of originals," those actions fall "outside the scope" of the statute. Coleman has therefore presented a plausible argument that the plain meaning of Utah Code section 76-8-413 does not criminalize copying or retaining copies of City records.

¶18 Coleman notes that the "legislature has demonstrated its ability to differentiate between crimes involving original government records and copies of those records," pointing to the Government Records Access and Management Act (GRAMA). *See generally* Utah Code §§ 63G-2-101 to -901. GRAMA establishes criminal penalties for any person "who intentionally discloses, provides *a copy of*, or improperly uses a private, controlled, or protected record" to which they had lawful access. Utah Code § 63G-2-801(1)(a), (2)(a) (emphasis added). Coleman also points out that under GRAMA, possession alone is not criminalized, but rather the statute penalizes the act of disclosure.

¶19 In response, the State "fails to meaningfully address [Coleman's] claim" that the statute does not criminalize copying documents "or provide us with legal analysis addressing the points" Coleman raises. *Broderick v. Apartment Mgmt. Consultants, LLC*, 2012 UT 17, ¶ 18, 279 P.3d 391. In his reply brief, Coleman notes that the State "does not squarely address [his] arguments." *See id.* In its brief, the State argued that "the evidence presented at trial was sufficient to prove" Coleman violated the statute. The

State pointed to Coleman's admission that he kept photographs of City records and Secretary's testimony that Coleman had a box of folders and documents in his trunk, but the folders were empty when he returned them to the City. Thus, the State presented its responsive argument in terms of the strength of the evidence presented at trial. But Coleman does not challenge the strength of the evidence presented at trial. Rather, he challenges whether the conduct proved at trial fits within the conduct criminalized by the text of the statute. The State did not respond to Coleman's statutory interpretation argument. "We will not bear the burden of argument and research on behalf of [the State]. Nor will we create arguments on behalf of [the State] in an attempt to respond to [Coleman]." *Id.* ¶ 19.

¶20    Because the State failed to respond to Coleman's statutory interpretation argument, Coleman need only meet the lowered appellate burden of making "a prima facie showing of a plausible basis for reversal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (cleaned up). He did so here, and we therefore reverse the denial of the motion to arrest judgment. But "without adequate briefing from [the State] in response to [Coleman's] arguments, we are not comfortable addressing the merits" of Coleman's statutory interpretation arguments.[5] *Broderick*, 2012 UT 17, ¶ 19. Therefore, this decision is "a non-merits decision that is not intended to have any precedential value." *Musselman v. Keele*, 2024 UT App 143, ¶ 20 n.4, 559 P.3d 64 (cleaned up).

---

5. We see potential merit in Coleman's interpretation of the statute. But because we lack briefing from the State, we do not resolve the question of whether Utah Code section 76-8-413 applies to copies of records. To the extent that the legislature wishes to provide clarification, we invite it to do so.

CONCLUSION

¶21 The State did not respond to Coleman's argument that Utah Code section 76-8-413 does not criminalize the copying of a City record. Because Coleman met his lowered burden of establishing a plausible basis for reversal of the district court's denial of his motion to arrest judgment, we reverse the district court's denial and remand the matter for entry of a judgment of acquittal of the offense charged.

––––––––––