2025 UT App 48

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DYLAN CHRISTIAN STUBBS,
Appellant.

Opinion
No. 20241146-CA
Filed April 10, 2025

Fifth District Court, Cedar City Department
The Honorable Jeffrey C. Wilcox
Nos. 211500618, 211500619

Wendy M. Brown, Debra M. Nelson, and Benjamin
Miller, Attorneys for Appellant

Derek E. Brown and Aubrey Bisbee,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1 Dylan Stubbs has been charged with several child sexual abuse offenses. At a detention hearing in early 2022, the district court denied Stubbs's request for bail. In August 2024, Stubbs moved to modify the earlier order, but the district court declined to do so. Stubbs now appeals the denial of his motion to modify, arguing that the court did not comply with several statutory requirements. For the reasons set forth below, we reverse the court's denial of Stubbs's motion and remand for further proceedings consistent with this opinion.

BACKGROUND

¶2     In December 2021, the State filed charges against Stubbs in two cases. In the first case, Stubbs was charged with one count of aggravated sexual abuse of a child based on an incident that allegedly occurred in 2017. In the second case, Stubbs was charged with two counts of sodomy on a child based on incidents that allegedly occurred between 2018 and 2019.

¶3     In January 2022, the district court held a combined detention hearing on both cases, after which it ordered that Stubbs should be held without bail. Stubbs did not appeal that decision, and he has remained incarcerated pending trial ever since.

¶4     In August 2024, Stubbs filed a motion to modify the pretrial detention order. Under Utah Code section 77-20-207(1), a court may "modify a pretrial status order" "only upon a showing that there has been a material change in circumstances." Through the course of his briefing and his subsequent oral arguments to the district court, Stubbs argued that the lengthy amount of time that he had been detained prior to trial constituted a "material change in circumstances." And he further argued that the delays were attributable to the State based on both prosecutorial decisions and certain actions taken by the Division of Child and Family Services (DCFS) during a related investigation.

¶5     Through counsel, Stubbs also made several proffers about why he believed he would not be a flight risk or a danger to the community if he were now released pending trial. For example, Stubbs's counsel proffered that during the intervening years, Stubbs "hasn't done anything wrong. He hasn't threatened anyone, and if he wanted to flee he doesn't have the wherewithal to do so." Counsel also proffered that DCFS had initially removed Stubbs's children, including the alleged victim in one of the cases, from the home of their mother, who is Stubbs's wife, as a result of the allegations. But he then proffered that there had since been a "successful reunification" between the children and their mother,

in part, because "all of the conditions imposed by the [juvenile] Court had been complied with by Mr. Stubbs."

¶6     The State opposed the motion to modify the prior detention order. In response to Stubbs's arguments regarding delays caused by DCFS, the State maintained that DCFS is "an independent agency" and that any delays caused by DCFS were not "grounds to find a material change in circumstances." And although the State admitted that the decision by prosecutors and the court to handle Stubbs's two separate cases "in lockstep" may have contributed to some of the delays, the State stood by that decision, reasoning that the cases "strengthen each other." The State also expressed its view that Stubbs continued to be a danger to the community. The State listed numerous occasions in which Stubbs had been accused of or, in some instances allegedly admitted to, committing sexual abuse. This history, the State suggested, was reason enough to keep Stubbs detained.

¶7     In September 2024, the district court held a hearing on Stubbs's motion to modify. At the close of the hearing, the court issued a ruling from the bench denying the motion. Starting with Stubbs's arguments about the delays in the cases, the court said that it was "concerned about Mr. Stubbs' long incarceration." The court observed that there had "been some delays perhaps on both sides," but it then expressed its view that Stubbs had "no duty" to move the cases along himself. The court then opined that the cases had been pending for a "long time," at which point it stated: "I do think that looking at this that that may be a mater—that's a material change. That's why I've allowed this hearing to go forward."

¶8     But the court then observed that this "alone is not a reason to readdress bail," so it turned to the other questions involved in a bail determination. The court started with the question of whether Stubbs was a flight risk, concluding that he was not. The court then stated that it was "very concerned . . . about the State's

allegations that he is a sexual predator." The court referenced several of the allegations that had been made against Stubbs, at which point it concluded that there had been "credible proffered evidence" that he "has a propensity to be a sexual predator." The court ruled that Stubbs had not "overcome the State's allegations that he is a danger to society," so it accordingly decided to "continue the no bail" order.

¶9     In October 2024, the court issued a brief written order that reiterated its conclusions about why it was denying the motion to modify. There, the court wrote that it had "significant concerns related to the amount of time that [Stubbs] has remained incarcerated while these criminal cases have been pending." The court wrote that it held "both parties responsible for various delays," but it then specifically identified some sources of delay for which Stubbs was not responsible, including "the untimely death" of one of Stubbs's attorneys, as well as delays caused when a previously assigned judge was appointed to the federal bench.

¶10     The court then wrote that "even if these delays rise to the level of a 'material change,'" its "concerns for the safety of the community are compelling." It specifically identified one instance in which Stubbs had apparently admitted to committing some form of sexual abuse while Stubbs was a juvenile, observing that this incident informed its "opinion as to the level of risk that [Stubbs] poses to children within his family as well as the wider community." In light of all this, it denied Stubbs's motion to modify his pretrial detention status.

ISSUES AND STANDARDS OF REVIEW

¶11     Stubbs appeals the denial of his motion to modify. In its responsive brief, the State argues that this court does not have jurisdiction to hear this appeal. "Whether [an appellate] court has jurisdiction over an appeal is a question of law that can be raised

for the first time on appeal." *Gardiner v. Taufer*, 2014 UT 56, ¶ 13, 342 P.3d 269 (quotation simplified).

¶12 As explained below, we agree with Stubbs that we have jurisdiction, so we address Stubbs's challenges as well. On that front, we review a district court's "determination regarding the presence or absence of a substantial change in circumstances for an abuse of discretion." *State v. Groce*, 2024 UT App 166, ¶ 18, 560 P.3d 200 (quotation simplified), *cert. denied*, Mar. 20, 2025 (No. 20250184). "A district court's determination that there is clear and convincing evidence that the defendant is a substantial danger is reviewed deferentially, and this court will reverse that determination only if it is clearly erroneous." *Id.* (quotation simplified).

ANALYSIS

¶13 Under Utah Code section 77-20-201(1), a person "charged with, or arrested for, a criminal offense shall be admitted to bail as a matter of right" unless one of several delineated circumstances exists. One such circumstance is that the person has been charged with a felony and "there is substantial evidence to support the charge and the court finds, by clear and convincing evidence," that:

> (i) the individual would constitute a substantial danger to any other individual or to the community after considering available conditions of release that the court may impose if the individual is released on bail; or

> (ii) the individual is likely to flee the jurisdiction of the court if the individual is released on bail.

*Id.* § 77-20-201(1)(c). Under Utah Code section 77-20-207(1), a court may subsequently "modify a pretrial status order" "only

upon a showing that there has been a material change in circumstances."

¶14 In his opening brief, Stubbs argues that the district court erred in denying the motion to modify because the court did not specifically find that Stubbs was a "substantial danger" to individuals or the community (and, he contends, there was also no support for such a finding), and he also argues that the court did not consider "available conditions of release" as part of its analysis. In its responsive brief, the State argues that we lack jurisdiction to consider these challenges, and it further argues that we should not address Stubbs's arguments because Stubbs did not establish that there had been a "material change in circumstances." Of note, the State does not offer a substantive response to the arguments presented by Stubbs in his opening brief. Given the threshold nature of the State's arguments, we address them first.

## I. Jurisdiction

¶15 The State argues that we lack jurisdiction for two reasons. We disagree with both.

¶16 First, the State argues that the denial of the modification motion was not immediately appealable. "As a general rule, an appellate court does not have jurisdiction to consider an appeal from a district court order unless the appeal is taken from a final order or judgment that ends the controversy between the litigants." *In re adoption of K.R.S.*, 2024 UT App 165, ¶ 15, 561 P.3d 229 (quotation simplified); *see also* Utah R. App. P. 3(a)(1). But the legislature has created an expedited appeal right for pretrial detention rulings. Under the statute, if "a magistrate or judge issues a pretrial status order that orders the individual be detained during the time the individual awaits trial or other resolution of criminal charges, the individual has the right to an expedited appeal of the pretrial status order." Utah Code § 77-20-209.

¶17    In the State's view, this statute allows for an expedited appeal of an initial decision denying bail, but it doesn't authorize an appeal of a ruling that "only denied [a] motion seeking to *change* the prior detention order." (Emphasis in original.) But in *State v. Groce*, 2024 UT App 166, 560 P.3d 200, *cert. denied*, Mar. 20, 2025 (No. 20250184), we recently considered and rejected a similar argument made by the State about the same statutory language in question. There, we acknowledged that "there is only one original pretrial status order." *Id.* ¶ 36 (quotation simplified). But we then held that the reference in section 77-20-209 to "a pretrial status order" is "broad enough to mean *any* such pretrial detention order." *Id.* (emphasis added, quotation otherwise simplified). From there, we held that "a defendant may appeal not only the original pretrial detention order, but also subsequent orders in which the court keeps the defendant in pretrial detention." *Id.*[1]

¶18    This is precisely what happened here. In his motion to modify, Stubbs asked the district court to revisit the earlier ruling that detained him pending trial. In denying the motion to modify, the court ruled from the bench that it would "continue the no bail" order. Under the principles set forth in *Groce*, the State's first argument thus fails.

¶19    Second, in a rule 24(j) letter the State filed shortly before oral argument, the State asserts that "this appeal [is] moot" because of a new ruling that recently appeared on the district

---

1. In its briefing in this appeal, the State expressed its disagreement with *Groce*, but it did not ask us to overrule it. *See generally Eldridge v. Johndrow*, 2015 UT 21, ¶¶ 19, 22, 345 P.3d 553 (suggesting that precedent can be reconsidered and potentially overruled when reconsideration has "been explicitly raised by the parties and adequately argued in their briefs," and then identifying factors for Utah appellate courts to consider before overruling precedent). Under principles of horizontal stare decisis, *Groce* is therefore controlling.

court's docket.[2] As we explained in *Groce*, "mootness is a constitutional principle" that implicates this court's jurisdiction over a case, and it "turns on whether the issues and controversy before the court remain live, and on whether an order granting the requested relief would still be effective." 2024 UT App 166, ¶¶ 22, 23 (quotation simplified).

¶20 There's an initial question about what the ruling at issue actually was. At the outset, this ruling stated that the "matter before the court" was Stubbs's "Motion to Modify his Pretrial Detention Status," and it then referenced the same September 2024 hearing that prompted the court's earlier ruling. Having set the ruling up in that fashion, the court then set forth a slightly expanded version of the procedural history for the motion to modify and the arguments presented by the parties, after which the court set forth a legal analysis of its reasons for denying the motion that's almost a verbatim copy of the legal analysis from the earlier decision.

¶21 At oral argument in this appeal, both parties expressed some confusion about why the court issued this ruling. Both parties agreed that Stubbs did not file a second motion to modify that would have prompted an additional ruling, and both parties also agreed that there had not been a new hearing in the interim. Having reviewed the record ourselves, we likewise see no indication of any new motion that would have prompted a new ruling from the court. So far as we can tell, the court appears to have chosen to reissue its prior ruling, this time with a little bit more background. And we see no meaningful addition at all in terms of the court's analysis.

---

2. The ruling in question states that it was signed by the district court on January 13, 2025, but for reasons that are unclear from the record, it didn't appear on the district court's docket until February 3, 2025.

¶22 The State has provided no authority, and we see none, that would support the conclusion that the district court's decision to reissue a slightly expanded version of its prior ruling would render this appeal moot. And this is particularly so given that this is a bail appeal. In *Groce*, we referred to the "unique nature of such appeals," which present "the rather rare scenario in which the appellate court and the district court are working on the same case at the same time." *Id.* ¶¶ 24, 26. Because of this dynamic, we held that for purposes of a mootness analysis in a bail appeal, "the controversy between the[] parties regarding pretrial detention" will typically "remain[] live" so long as the case has not been resolved and the defendant remains incarcerated. *Id.* ¶¶ 29–30. And this conclusion largely explains why we ultimately held that a defendant may appeal "not only the original pretrial detention order, but also subsequent orders in which the court keeps the defendant in pretrial detention." *Id.* ¶ 36.

¶23 In this appeal, Stubbs challenges the court's denial of his motion to modify the original detention order on several grounds. As explained above, even though this is an appeal from a denial of motion to modify, we conclude that we have jurisdiction over this appeal. Against that backdrop, we likewise see no reason to conclude that the district court's decision to subsequently reissue a slightly expanded version of its earlier ruling somehow eliminated the controversy between the parties. We accordingly reject the State's suggestion that this appeal is moot.

## II. Material Change in Circumstances

¶24 Under Utah Code section 77-20-207(1), "[a] party may move to modify a pretrial status order" "only upon a showing that there has been a material change in circumstances." When a district court is confronted with such a motion, the request is "governed by a somewhat different standard, involving not only the substantial evidence and substantial danger/flight risk inquiry but also the question of whether there has been a material change

in circumstances that might warrant a change in pretrial detention status." *Groce*, 2024 UT App 166, ¶ 33 (quotation simplified).

¶25 The State claims that the district court "found no material change in circumstances to warrant modification" of Stubbs's "pretrial detention status" and that the court was thus "correct to not reach" the additional steps in the inquiry. But the State's characterization of what occurred below is at odds with the record. In the proceedings below, Stubbs argued that the length of time that he had been detained awaiting trial constituted a material change in circumstances. At the close of the September 2024 hearing at which the court addressed this motion, the court observed that it was "concerned about" Stubbs's "long incarceration." The court then said, "*I do think* that looking at this that that may be a mater—*that's a material change*. That's why I've allowed this hearing to go forward." (Emphases added.) From there, the court then addressed and made rulings on the flight risk and dangerousness questions.

¶26 The State nevertheless pushes back on two fronts, both of which it claims support its assertion that the district court somehow did not find that a material change in circumstances occurred. We find neither of them persuasive.

¶27 First, the State points out that the court used slightly different verbiage in the written decision that it issued a month or so after issuing its oral ruling. In that written decision, the court stated that it had "significant concerns related to the amount of time that [Stubbs] has remained incarcerated while these criminal cases have been pending." And, as the State points out, the court then wrote: "However, *even if* this delay rises [to] the level of a 'material change,' this Court finds that concerns for the safety of the community are compelling." (Emphasis added.)

¶28 The State places much weight on the "even if," suggesting that this phrase was an indication that the court did not actually find that the delays in the case qualified as a material change in

circumstances. But we disagree with the State's reading of the record. At face value, the court's use of the phrase "even if" does not seem to mean that the court was finding that there was not a material change in circumstances. Instead, even in isolation, we think the court's statement can be read as something akin to an explanation for why the court was denying Stubbs's request for relief even though it had ruled in his favor on the change of circumstances question.

¶29    This reading is appropriate here in light of the record as a whole. The State does not contend that the oral ruling was somehow invalid or has no place in our analysis. But again, in the oral ruling, the court explicitly found that the delay did qualify as a material change, stating: "*I do think* that looking at this that that may be a mater—*that's a material change.*" (Emphases added.) If the court meant to take back that finding in its written decision, one would expect the court to have said so. But it didn't. Instead, in both the oral ruling and again in the written ruling, the court moved on and addressed the subsequent statutory questions about whether Stubbs was a flight risk and posed any danger to the public. The court was plainly aware of how the statutory scheme operated. And under that scheme, there would have been no reason for the court to have made those determinations if it had first concluded that the delays in the case did not qualify as a material change in circumstances. Thus, given the court's statements at the hearing, as well as the overall structure of its analysis, the result is the same: the court's "even if" phraseology is most naturally read here as a transition for its explanation of why it was denying the motion as a whole, as opposed to somehow being an unspoken invalidation of a finding about a material change in circumstances that it had already pointedly made.

¶30    Second, the State points out that, in the written ruling, the court wrote that it held "both parties responsible for various delays." From this, the State suggests that the court did not

actually conclude that the delays "constitute[d] a material change" in circumstances.

¶31     But in that same paragraph, the district court also pointed out that some of the delays were not attributable to Stubbs. The court wrote that "[s]ome of these delays are due to the untimely death of one of [Stubbs's] attorneys," and it pointed out that some other delays were caused when a previously assigned judge was appointed to the federal bench. And again, the district court then went beyond the material change step and addressed the dangerousness step. Thus, even with its apparent belief that Stubbs was responsible for some of the delays, the court seems to have contemplated that Stubbs had shown that there were enough delays for which Stubbs was not responsible that it was appropriate to find that a material change in circumstances had occurred—which, again, was the very reason that it could reach the next steps in the statutory analysis. Indeed, addressing this very dynamic in the oral ruling, the court stated, "That's why I've allowed this hearing to go forward."

¶32     In short, the clearest indication of what the court meant was what it said, and what it said was that it did "think" that the delays in the case constituted "a material change." The remainder of the court's analysis (in both the oral and the written rulings) is consistent with the conclusion that the court believed that this statutory requirement had been satisfied. We therefore see no basis for accepting the State's contention that the district court did not find that a material change in circumstances had occurred.

### III. Stubbs's Challenges

¶33     In his brief, Stubbs argues that the district court's denial of his modification motion was flawed because the court did not find that Stubbs is a "substantial danger" and there was no support for such a finding in any event. Stubbs further argues that the court failed to consider "available conditions of release" as required by the statute.

¶34 In its responsive brief, the State does not respond to these arguments, instead resting solely on its contentions about jurisdiction and the change in circumstances requirement. "When an appellee fails to present us with any argument, an appellant need only establish a prima facie showing of a plausible basis for reversal. This is a lower standard than the typical burden of persuasion on appeal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (quotation simplified). Thus, "when appellees fail to brief an argument raised by an appellant on appeal, they do so at their own peril." *State v. Coleman*, 2025 UT App 33, ¶ 14, -- P.3d -- (quotation simplified).

¶35 Of note, we have applied this doctrine on an issue-by-issue basis. In *Musselman v. Keele*, for example, the appellee chose to not respond to the appellant's substantive arguments, instead focusing his responsive brief entirely on a jurisdictional issue. 2024 UT App 143, ¶ 19, 559 P.3d 64. After we determined that we had jurisdiction, we then addressed each of the appellant's arguments under the lowered *AL-IN* standard. *Id.* ¶¶ 14, 21–30. We did something similar in *Coleman*, applying this standard where the State had made "no effort to engage" with a particular argument made by the defendant in his brief about how to interpret the statute in question. 2025 UT App 33, ¶ 14. Because this is what occurred here as well, we address Stubbs's arguments under the lowered *AL-IN* standard.[3]

¶36 Stubbs argues that to satisfy Utah Code section 77-20-201(1)(c)(i), a district court must expressly find that the defendant would constitute a "substantial danger" to an individual or the

---

3. As we've indicated before, a decision under the *AL-IN* standard resolves the issues for purposes of the present appeal, but it constitutes a "non-merits decision that is not intended to have any precedential value." *State v. Coleman*, 2025 UT App 33, ¶ 20, -- P.3d -- (quotation simplified); *accord Musselman v. Keele*, 2024 UT App 143, ¶ 20 n.4, 559 P.3d 64.

community if the defendant were released. In the alternative, Stubbs argues that, even if the district court was not required to use this exact phrasing, the court below did not implicitly make such a finding either, given that there was support for his assertion that he was no longer a substantial danger by the time of the motion to modify. We need not decide whether a district court must use these exact words in a bail determination (or, by extension, in a decision on a motion to modify a prior bail determination). This is so because we agree that Stubbs has made a prima facie showing of a plausible basis that there was not a sufficient finding at all, particularly given the context of Stubbs's proffers.

¶37   In its ruling, the district court expressed its concern that Stubbs might be a "danger" to the community if released. But the court never found that Stubbs was a "*substantial* danger," which is the statutory standard. *See* Utah Code § 77-20-201(1)(c)(i) (emphasis added). And even if it's legally possible that such a finding can be implied (which, again, we do not decide), that extra word must have some meaning. After all, if the legislature had wanted to condition a bail denial on a finding of mere "danger" alone, it could have. But it didn't, thus indicating that the legislature thought that something more pronounced is required.

¶38   As discussed throughout this opinion, the driving force behind Stubbs's motion and his arguments on appeal was the length of time that had elapsed since Stubbs was charged and then initially denied bail. In the proceedings below, Stubbs asserted that several circumstances had occurred during the intervening period that, in his view, lowered the risk that he would pose a danger to others if he were now released. First, Stubbs proffered that while he was in jail awaiting trial, he had complied with all jail rules and had not been written up for any kind of infraction. Second, Stubbs proffered that there had been no allegation during this period that he had made improper contact with anyone

(including any victims), thus showing that he's amenable to the imposition of any conditions of release. Third, Stubbs asserted that his lack of dangerousness was demonstrated by his compliance with several conditions imposed on him by the juvenile court in a related case during this intervening period. And finally, Stubbs proffered that after DCFS removed the children from his wife's home (including the child who was the alleged victim in one of the cases), there had since been a "successful reunification" between the children and Stubbs's wife, in part, because Stubbs had "complied with" "all of the conditions imposed by the [juvenile] Court." Taken together, Stubbs asserted that his ongoing good behavior over the course of this lengthy period of time, including the circumstances that led DCFS to deem it appropriate to return the children to their mother's care (even though she's still married to Stubbs), was enough to alter the original calculus as to any danger Stubbs might pose if he were released pending trial.

¶39 In our view, Stubbs has at least plausibly proffered that these events might have persuaded the court that, even if Stubbs posed a "substantial danger" in 2022, he no longer posed the same degree of danger two and a half years later. We see nothing in the record showing that the district court definitively grappled with these particular proffers, nor do we see an indication that the court said anything that would explicitly or implicitly show that it thought that, despite these proffers, Stubbs still posed a *substantial* danger. But an evaluation of whether a defendant poses a particular level of danger is highly contextual, and it's an evaluation that is best made by the district court in the first instance. When this limited record is viewed through the prism of the lowered *AL-IN* standard, we conclude that Stubbs has made a sufficient showing to support reversal.

¶40 We accordingly reverse the court's denial of Stubbs's motion to modify, and we remand with instructions for the court to determine on remand whether Stubbs would present a

"substantial danger to any other individual or to the community" if released on bail. *Id.*[4]

## CONCLUSION

¶41    For the reasons set forth above, we conclude that (1) we have jurisdiction to consider Stubbs's challenge to the denial of his motion to modify the prior pretrial detention order, (2) the district court did find a material change in circumstances, and (3) under the lowered *AL-IN* standard, Stubbs has shown that there is a plausible basis for reversal based on the district court's failure to find (either explicitly or implicitly) that he would constitute a substantial danger to individuals or the community if he were released. We therefore reverse the district court's denial of Stubbs's motion to modify his pretrial detention status and remand for further proceedings consistent with this opinion.

––––––––––

4. In light of our decision to reverse on this basis, we need not consider Stubbs's additional challenge, which was that the district court did not consider "available conditions of release" when making this determination as required by Utah Code section 77-20-201(1)(c)(i). Consistent with this statutory requirement, the district court on remand should, of course, consider any available conditions of release as part of its analysis.