**2025 UT App 100**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JAKE DEVIN DOWHANIUK,
Appellant.

Opinion
No. 20250013-CA
Filed July 3, 2025

Fifth District Court, Beaver Department
The Honorable Gary D. Stott
The Honorable Thomas M. Higbee
No. 241500031

Wendy M. Brown, Debra M. Nelson, and
Benjamin Miller, Attorneys for Appellant

Derek E. Brown and Hwa Sung Doucette,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

HARRIS, Judge:

¶1      Jake Devin Dowhaniuk is being held without bail pending resolution of a criminal information charging him with aggravated assault and criminal mischief. In its original pretrial detention order, the district court ruled that Dowhaniuk could be released on his own recognizance so long as he was equipped with an ankle monitor and complied with certain other conditions. However, the State later asked the court to modify that ruling and to order that Dowhaniuk be held without bail or other pretrial release opportunity. The court granted that motion electronically some 80 minutes after the State filed it.

¶2      Dowhaniuk now appeals from that order, as well as from a subsequent order in which the court refused to modify its modified order. He asserts (among other things) that he was not afforded a proper opportunity to be heard on the State's motion to modify. We agree with Dowhaniuk that the court's modification order was procedurally infirm and that the errors prejudiced Dowhaniuk. We therefore vacate that order, reinstate the original detention order, and remand this case to the district court for further proceedings.

BACKGROUND

¶3      After an incident with his girlfriend (Girlfriend), Dowhaniuk was charged with domestic-violence aggravated assault, a third-degree felony, and criminal mischief, a class A misdemeanor. In the charging document, the State alleged that Dowhaniuk hit Girlfriend in the face and applied "a large amount of pressure" to her throat. The State also alleged that Dowhaniuk had damaged Girlfriend's car. On the same day the information was filed, the district court entered a temporary pretrial status order that required Dowhaniuk "to be held without bail."

¶4      At a hearing held early in the case—just eleven days after the information was filed—the district court heard arguments about whether Dowhaniuk should be detained pending resolution of the charges. Dowhaniuk's first attorney (Counsel 1) asked the court to release Dowhaniuk on his own recognizance "with certain conditions." The State opposed that request, pointing out that Dowhaniuk was accused of choking Girlfriend, and arguing that "because of the threat of risk that he creates to [Girlfriend] and to the public, in general," Dowhaniuk "should remain in custody on the no-bail hold." The State also noted that Dowhaniuk had "a substantial criminal history" that included twenty-two prior offenses. But the State told the court that, if it was inclined to allow pretrial release, then "at a minimum" the

court should order "electronic monitoring" of Dowhaniuk and order "that there be absolutely no contact" with Girlfriend.

¶5 After some back-and-forth, Dowhaniuk addressed the court directly and said, "If [the State wants] an ankle monitor, I'll do it." In response, the State told the court that if Dowhaniuk was "willing to agree to a home confinement with an ankle monitoring," it would "stipulate to that." At the conclusion of the hearing, the court granted Dowhaniuk's request that he be released on his own recognizance, with conditions, including that Dowhaniuk obtain an ankle monitor. The court told Dowhaniuk that he "[wouldn't] be released until [he] got the monitor on." The court later memorialized its ruling in a written order (the Initial Detention Order), in which it allowed Dowhaniuk to be "released with home confinement and electronic monitoring" but emphasized that Dowhaniuk was "to not be released until he ha[d] been fitted for the electronic monitoring."

¶6 Just over a month later, the district court—a different judge this time—held a preliminary hearing where it received evidence, heard arguments, and ordered that Dowhaniuk be bound over for trial on both charges. Toward the end of the hearing, after the court had announced its bindover decision, Counsel 1 asked to address bail, and he informed the court that Dowhaniuk had not been able to obtain an ankle monitor because he lives "25 percent below the poverty level" and could not afford the cost of the monitoring. For this reason, Counsel 1 asked the court to modify the detention order to remove the ankle monitor condition. The State opposed this request, again mentioning Dowhaniuk's criminal history and expressing concern for Girlfriend's safety. The court denied Dowhaniuk's motion—a ruling that Dowhaniuk has not appealed—and stated that if it were to modify pretrial release at all, it "would change it the other way," presumably meaning that it would be inclined to remove the possibility of pretrial release altogether. However, the court explained that it could not "change [the release conditions] more strictly without a motion from the State" and without giving

Dowhaniuk "a chance to respond." Thus, the court ruled that it was "going to leave it the way that it [was]," and it explained that if Dowhaniuk was going to be released, it was "going to be with an ankle monitor."

¶7 The next day, the State took the court up on its invitation, and it filed a one-sentence written motion asking the court to "hold [Dowhaniuk] in custody without bail." A day later, at 11:29 a.m., the State electronically filed an amended motion—this one consisting of three paragraphs—making the same request, but this time mentioning Dowhaniuk's criminal history, discussing the severity of the allegations against him, and asserting that Dowhaniuk would be a threat to Girlfriend specifically and "would constitute a substantial danger to" the community at large. Neither iteration of the State's motion contained any argument regarding any material change in circumstances that might have occurred since the entry of the Initial Detention Order. At 12:48 p.m. that same day—about 80 minutes after the State filed its amended motion—the district court electronically signed an order granting the State's motion (the First Modification Order), ordering that Dowhaniuk "be held without bail for the reasons that appear in the motion." Dowhaniuk did not appeal that order within thirty days of its entry.

¶8 About five months later, after a different attorney (Counsel 2) had been appointed to represent Dowhaniuk, Counsel 2 made an oral motion to modify the detention order to allow Dowhaniuk to be released, with conditions. Counsel 2 argued that Dowhaniuk was not a flight risk and could be released with "supervision" such that he could be "kept from the alleged victim." The State responded by again recounting Dowhaniuk's prior offenses and by again expressing concern for Girlfriend's safety. At the conclusion of the argument, the court denied Dowhaniuk's motion, stating that it was "very concerned about the safety risk" to Girlfriend. Some two months later, the court memorialized its ruling in a written order (the Second Modification Order), which stated that the existing "no bail hold remains."

¶9     Within thirty days of the entry of the Second Modification Order, Dowhaniuk filed a notice of appeal. *See* Utah Code § 77-18a-1(1) (allowing defendants to appeal, "as a matter of right," "an order denying bail"). While that appeal was pending, Dowhaniuk asked the district court to reinstate his time for filing an appeal from the First Modification Order, arguing that he had not been "informed of his right to appeal" that order. *See* Utah R. App. P. 4(f) (providing a mechanism for criminal defendants, in some circumstances, to obtain reinstatement of their time "for filing a direct appeal"). The court granted that motion, finding that Dowhaniuk had been "deprived of the right to appeal through no fault" of his own. (Quoting *id.* R. 4(f)(1).) Thereafter, within thirty days of the court's order reinstating his time to appeal the First Modification Order, Dowhaniuk filed a second notice of appeal. We then consolidated Dowhaniuk's appeals.

ISSUES AND STANDARDS OF REVIEW

¶10    Dowhaniuk challenges both the First Modification Order and the Second Modification Order. With regard to the First Modification Order, he brings both procedural and substantive challenges. On the procedural side, he asserts that the district court violated applicable rules when it signed the First Modification Order without giving him an opportunity to be heard.[1] Such issues are reviewed for correctness. *See Colin v. State*,

---

1. Dowhaniuk asserts that the district court's actions also violated constitutional due process principles (in addition to procedural rules). We acknowledge the strength of Dowhaniuk's argument on this point, *see Springdale Lodging, LLC v. Town of Springdale*, 2024 UT App 83, ¶ 31, 552 P.3d 222 (stating that "the opportunity to be heard is a crucial aspect of a constitutional procedural due process claim" because, "at a minimum, due process requires timely and adequate notice and an opportunity to be heard in a meaningful way" (cleaned up)), but we need not reach its merits because we sustain Dowhaniuk's rule-based challenge.

2008 UT App 305, ¶ 9, 193 P.3d 636 ("Whether procedural error has occurred is a question of law that we review for correctness.").

¶11     On the substantive side, Dowhaniuk points out that, in entering the First Modification Order, the court did not make any determination that a material change in circumstances had occurred since the Initial Detention Order. If we reached the merits of this challenge, we would review the district court's "determination regarding the presence or absence of a substantial change in circumstances for an abuse of discretion." *State v. Groce*, 2024 UT App 166, ¶ 18, 560 P.3d 200 (cleaned up), *cert. denied*, 568 P.3d 260 (Utah 2025). But because we find merit in Dowhaniuk's procedural challenge, we need not reach the merits of his substantive challenge; we include the standard of review here, however, because (as explained below) it is a factor in our determination that it is the district court—and not this court—that should consider this issue in the first instance.

¶12     In his appeal of the Second Modification Order, Dowhaniuk seeks the same relief that he seeks in his appeal of the First Modification Order, namely, reinstatement of the Initial Detention Order. And because our disposition of Dowhaniuk's appeal of the First Modification Order affords Dowhaniuk that same relief, we conclude—as discussed more fully below—that Dowhaniuk's appeal of the Second Modification Order has been rendered moot. "The question of whether issues presented in an appeal have been rendered moot by events occurring after the appeal has been filed is a question that, by definition, arises for the first time here on appeal, and therefore our decision is not governed by any standard of review, and we decide the matter as a question of law in the first instance." *Id.* ¶ 19 (cleaned up).

## ANALYSIS

¶13     We start by addressing Dowhaniuk's appeal of the First Modification Order, and we conclude that procedural infirmities

require us to vacate that order. Next, we explain that our disposition of that appeal renders moot Dowhaniuk's appeal of the Second Modification Order.

## I. The First Modification Order

¶14 As noted, Dowhaniuk raises both procedural and substantive challenges to the First Modification Order. Before addressing the merits of those challenges, we address the State's contention that Dowhaniuk's arguments are unpreserved, and we conclude that exceptional circumstances exist that serve to excuse Dowhaniuk's failure to raise his theories in the district court. After that, we turn to the merits of Dowhaniuk's claims, reaching only the procedural challenges because we agree with Dowhaniuk that the district court violated applicable rules by signing the First Modification Order before affording Dowhaniuk sufficient time to respond to the State's motion.

### A. Preservation

¶15 The State contends that the arguments Dowhaniuk raises on appeal—both procedural and substantive—regarding the First Modification Order are unpreserved for appellate review. Ordinarily, an issue must first be raised in the district court to be preserved for review on appeal. *See Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (stating that appellate courts "generally will not consider an issue unless it has been preserved for appeal"). The purpose of this rule is to "put the [district] court on notice of an issue and provide it with an opportunity to rule on it." *State v. Florez*, 2020 UT App 76, ¶ 33, 465 P.3d 307 (cleaned up).

¶16 The "primary considerations underlying the preservation rule are judicial economy and fairness." *Hillam v. Hillam*, 2024 UT App 102, ¶ 31, 554 P.3d 1137 (cleaned up). The rule promotes judicial economy by encouraging "parties to resolve their controversies at the trial level, allows the trial judge to correct errors at the trial level, establishes a comprehensive record for

appeal, and helps alleviate the otherwise heavy burden on appellate courts." *Id.* (cleaned up). And the rule promotes fairness because "if no objection was made in the [district] court, the adverse party would not be compelled to overcome the objection by presenting a rebuttal, providing an alternative argument, establishing an alternative defense, or introducing new evidence in an effort to overcome such an objection." *Id.* (cleaned up). "Our preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction." *Patterson*, 2011 UT 68, ¶ 13. "Consequently, we exercise wide discretion when deciding whether to entertain or reject issues that are unpreserved at trial or waived on appeal." *State v. Johnson*, 2017 UT 76, ¶ 12, 416 P.3d 443 (cleaned up).

¶17    When an issue is not properly preserved, we generally will not consider it on appeal unless one of three established exceptions to our preservation doctrines apply: "(1) the appellant establishes that the district court committed plain error, (2) exceptional circumstances exist, or (3) in some situations, if the appellant raises a claim of ineffective assistance of counsel in failing to preserve the issue." *State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867 (cleaned up).

¶18    The State is correct that the challenges Dowhaniuk now raises regarding the First Modification Order were not brought to the attention of the district court before entry of that order. Indeed, Dowhaniuk filed no opposition at all to the State's motion for modification of the Initial Detention Order, and he therefore raised no objections—whether procedural or substantive—to the State's motion before the district court granted it.

¶19    Dowhaniuk appears to acknowledge that the issues he raises on appeal were not raised at the district court prior to entry of the First Modification Order. But he nevertheless argues that exceptional circumstances exist that excuse his failure to preserve the issues he now raises. This exception to our preservation doctrine is often invoked but rarely applied, usually "where a rare

procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *State v. Van Huizen*, 2019 UT 01, ¶ 22, 435 P.3d 202 (cleaned up); *see also Johnson*, 2017 UT 76, ¶ 29 (stating that the "exceptional circumstances doctrine is applied sparingly" and is reserved "for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice" (cleaned up)). If a rare procedural anomaly exists, it "opens the door to a deeper inquiry" in which "additional factors must be considered to determine whether an appellate court should reach an unpreserved issue." *Johnson*, 2017 UT 76, ¶ 29. Those factors include "(a) whether the failure to address an unpreserved issue would result in manifest injustice, (b) whether there is a significant constitutional right or liberty interest at stake, and (c) judicial economy." *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 21 n.3, 507 P.3d 357 (cleaned up).

¶20    This is one of those rare cases where exceptional circumstances exist to excuse an appellant's failure to preserve an issue. Simply put, Dowhaniuk had no reasonable chance to make arguments in opposition to the State's motion because the court granted that motion 80 minutes after it was filed, without affording Dowhaniuk the opportunity to file a memorandum in opposition. Indeed, our supreme court has found a rare procedural anomaly where "the alleged error first arises in the lower court's final order or judgment and thus, leaves no opportunity for the party to object." *In re D.B.*, 2012 UT 65, ¶¶ 34–35, 289 P.3d 459 (cleaned up); *see also* 4 C.J.S. *Appeal and Error* § 297 (2025) ("The rule that questions should be raised at the first opportunity, and that contentions must be raised below in order to be available on appeal, does not apply where the question did not exist or could not be raised below."). Here, Dowhaniuk had no reasonable opportunity to object to the State's motion before the court granted it. This situation thus presents a rare procedural anomaly that did not allow Dowhaniuk a reasonable opportunity

to raise the legal theories he wishes to raise now and certainly excuses his failure to raise them below.

¶21 We must therefore engage in a "deeper inquiry" into the circumstances of this case to determine whether we should reach Dowhaniuk's unpreserved issues. *See Kelly*, 2022 UT App 23, ¶ 21 n.3 (cleaned up). And after doing so, we conclude that it would be unfair to prevent Dowhaniuk from raising his appellate theories in this case. The lack of preservation here cannot equitably be laid at Dowhaniuk's feet, when he was deprived of any reasonable opportunity to respond to the State's motion. And there is a substantial liberty interest at stake, namely, Dowhaniuk's constitutional and statutory right to pretrial release, as long as certain circumstances are met. *See* Utah Const. art. I, § 8(1) (stating that, subject to three exceptions, "[a]ll persons charged with a crime shall be bailable"); *see also* Utah Code § 77-20-201(1) (stating that an individual charged with a crime "shall be admitted to bail as a matter of right," unless certain circumstances exist).

¶22 The State resists this conclusion by arguing that Dowhaniuk could have preserved at least some of these issues by raising them during the discussion at the conclusion of the bindover hearing after the court stated that, while it was not inclined to grant Dowhaniuk's motion to modify, it might be inclined to "change it the other way." But at that point in time, the State had yet to file a motion for modification; indeed, the only modification motion on the table was *Dowhaniuk*'s oral motion to remove the ankle monitor requirement, not the State's motion to request a no-bail order (which it did not file until a day or two after the hearing). Notably, the court itself recognized that the State had yet to file any motion at that point, stating that it could not "change [the release conditions] more strictly without a motion from the State" and without affording Dowhaniuk "a chance to respond." It is simply not fair to Dowhaniuk to expect him to have anticipated, in advance, that the State would file a motion and to have raised specific theories in response to that motion before it had even been filed.

¶23 In short, Dowhaniuk had no reasonable opportunity to raise to the district court, before the challenged order was entered, any of the theories he is attempting to raise now on appeal. And for the reasons discussed, this case thus presents an exceptional circumstance that excuses Dowhaniuk's failure to raise those theories below. We therefore proceed to consider and address Dowhaniuk's appellate issues as though they had been properly preserved for our review.

B.      Procedural Challenges to the First Modification Order

¶24 Dowhaniuk raises procedural objections to the First Modification Order. Chiefly, he asserts that the court failed to afford him an opportunity to meaningfully respond to the State's motion to modify the Initial Detention Order, as required by applicable procedural rules. We agree with Dowhaniuk.

¶25 This case is a criminal case, to which the Utah Rules of Criminal Procedure apply. *See* Utah R. Crim. P. 1(b). One of those rules governs the filing of motions, and that rule specifies (among other things) when certain enumerated motions must be filed. *See id.* R. 12(c). As relevant here, that rule at one point alludes to situations in which "the time for filing a response to a motion . . . has passed," *see id.* R. 12(b), but neither that rule nor any other rule of criminal procedure sets forth actual deadlines for filing responses to motions. By contrast, the rules of *civil* procedure do contain such a rule, *see* Utah R. Civ. P. 7, and the civil rules "govern in any aspect of criminal proceedings where there is no other applicable statute or rule," at least so long as application of the civil rules in criminal cases "does not conflict with any statutory or constitutional requirement," *id.* R. 81(f). Because there is no rule of criminal procedure that sets forth deadlines for filing responses to motions, and because application of rule 7 of the Utah Rules of Civil Procedure in this criminal case would not conflict with any statutory or constitutional requirement, we look to rule 7 to provide the timing requirements for filing and responding to the State's motion to modify.

¶26     Under rule 7, when a party files a motion with the court, the nonmoving party is given up to fourteen days to "file a memorandum opposing the motion." *Id.* R. 7(d)(1). After briefing is complete, either party is entitled to "file a request to submit the motion for decision." Utah R. Crim. P. 12(b). But ordinarily, "[i]f no party files a written Request to Submit, or the motion has not otherwise been brought to the attention of the court, the motion will not be considered submitted for decision." *Id.* There are exceptions to these provisions that are applicable in certain circumstances, *see* Utah R. Civ. P. 7(l), (m) (listing certain motions that may be adjudicated without waiting for a response in opposition), but none of those exceptions are applicable here.

¶27     In this case, the district court committed two procedural errors in adjudicating the State's motion to modify the Initial Detention Order. First, it adjudicated the State's motion without affording Dowhaniuk the requisite fourteen-day window within which to file a response. And second, the court adjudicated the motion before receiving a request to submit or before the parties otherwise brought the motion to the court's attention. Even the State acknowledges that "the district court should have given Dowhaniuk the time and opportunity to respond before it entered the [First Modification Order]."

¶28     These procedural errors mattered here. As already noted, they deprived Dowhaniuk of any reasonable opportunity to respond to the State's motion. Even assuming for purposes of the discussion that these errors are not per se harmful, Dowhaniuk has persuaded us that he was prejudiced by the errors. Most significantly, he was deprived of the opportunity to explain to the court that under subsection (1) of the relevant statute, as a prerequisite for granting the State's motion to modify the Initial Detention Order, the court needed to find "that there ha[d] been a material change in circumstances" since the entry of the Initial Detention Order. Utah Code § 77-20-207(1)(b); *see also State v. Groce*, 2024 UT App 166, ¶ 57, 560 P.3d 200 ("[I]f circumstances have not materially changed since the entry of the then-operative

pretrial status order, the governing statute requires the district court to deny the request for modification on that ground alone, without engaging anew in the substance of the inquiry discussed in the previous section and mandated by Utah law."), *cert. denied*, 568 P.3d 260 (Utah 2025). This argument is far from frivolous, because the State made no argument, in its motion to modify, that there had been any such change in circumstances, and the district court, in its order, made no findings to that effect.

¶29    Even here on appeal, the only argument the State makes on this point is to assert that Dowhaniuk's own financial troubles—which the district court apparently didn't know about when it entered the Initial Detention Order—constitute a material change in circumstances. But while Dowhaniuk's apparently worsened financial situation could perhaps justify a modification of the Initial Detention Order in Dowhaniuk's favor by removing the ankle monitoring requirement, the State makes no effort to explain how or why it could constitute the sort of "material change in circumstances" that would justify modifying the order in *the State*'s favor to no longer even afford Dowhaniuk the opportunity to be released on an ankle monitor.[2] *See* Utah Code

---

2. Dowhaniuk also asserts that the ankle-monitoring condition constituted a "financial condition as a condition of release." *See* Utah Code § 77-20-207(2) (allowing a defendant to "move to modify a pretrial status order if . . . the magistrate or judge imposed a financial condition as a condition of release in the pretrial status order" and "the defendant is unable to pay the financial condition"). But we need not decide this issue in this appeal, because this issue is relevant only to *Dowhaniuk*'s motions to modify the pretrial status order. *See id.* § 77-20-207(1), (2) (allowing either side to "move to modify a pretrial status order . . . upon a showing that there has been a material change in circumstances," but allowing only "a defendant" to make such a motion on the ground that the defendant is "unable to pay" a "financial condition"). As already noted, Dowhaniuk did not

(continued…)

§ 77-20-207(1), (2). In other words, Dowhaniuk has directed our attention to seemingly strong arguments that, if he had been given a chance to advance them prior to entry of the First Modification Order, are reasonably likely to have made a difference to the court's analysis. Stated another way, we perceive a reasonable probability of a different result, under these circumstances, had Dowhaniuk been afforded the opportunity to respond to the State's motion.

¶30 Moreover, Dowhaniuk sustained tangible prejudice by entry of the First Modification Order itself, which required him to be held without bail and no longer allowed him the option of pretrial release with conditions (such as an ankle monitor). The State asserts that, due to his financial condition, he sustained no actual prejudice from the entry of the First Modification Order, because he apparently could not afford to pay for the ankle monitor, one of the key conditions of release under the Initial Detention Order. But Dowhaniuk has been detained now for more than a year, and just because he represented that he could not afford ankle monitoring at the time he sought modification, it does not necessarily follow that he would *never* be able to afford it, whether on his own or with the assistance of friends or family. We find persuasive Dowhaniuk's assertion that the removal of the ankle monitoring option was prejudicial to him and cannot be categorized simply as "no harm, no foul."

¶31 Accordingly, based on these prejudicial procedural errors, we vacate the First Modification Order, reinstate the Initial Detention Order, and remand the matter for further proceedings. During those proceedings, either party will of course be free to make a renewed motion to modify the Initial Detention Order. If

---

appeal the denial of his first motion to modify, *see supra* ¶ 6, and (as discussed below) his appeal of the Second Modification Order has been rendered moot by our disposition of his appeal of the First Modification Order (which, of course, concerns a motion that *the State* made, not Dowhaniuk).

the State elects to make such a motion, Dowhaniuk must be given an opportunity to respond to it as set forth in the Utah Rules of Criminal Procedure and (as applicable) in the Utah Rules of Civil Procedure. Furthermore, as noted, no motion to modify the Initial Detention Order based on subsection (1) of the relevant statute may appropriately be granted absent a finding "that there has been a material change in circumstances" since the entry of the Initial Detention Order. *Id.* § 77-20-207(1)(b). And we decline the State's invitation to affirm the entry of the First Modification Order on the alternative basis that—despite the absence of any findings on this point—there existed a material change in circumstances at the time of the State's motion to modify the Initial Detention Order. Determinations regarding the existence of a material change in circumstances should ordinarily be made in the first instance by the district court, and those determinations are then reviewed deferentially on appeal. *See supra* ¶ 11. And we are reluctant to vary that general rule here, especially where the State's argument on this point is, in our view, not clear enough to remove it from the district court's purview as a matter of law. *See supra* ¶ 29. Accordingly, we leave any determinations regarding changed circumstances for the district court to determine in the first instance, in the event either party seeks to modify the reinstated Initial Detention Order.

## II. The Second Modification Order

¶32 Finally, a word about Dowhaniuk's consolidated appeal of the Second Modification Order.[3] Our disposition of Dowhaniuk's

---

3. The State contested the appeal of the Second Modification Order on jurisdictional grounds, arguing (among other things) that Dowhaniuk is not entitled to file this appeal as of right under section 77-20-209 of the Utah Code because the Second Modification Order was a *denial* of a request to modify a detention order and merely kept the First Modification Order in place. Although we dispose of Dowhaniuk's appeal of the Second

(continued…)

appeal of the First Modification Order—vacating that order and reinstating the Initial Detention Order—renders moot Dowhaniuk's appeal of the Second Modification Order.

¶33 The doctrine of mootness is not "a mere matter of convenience or judicial discretion." *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 27, 289 P.3d 582. Rather, "[m]ootness is a constitutional principle" that implicates our "judicial power" to adjudicate cases, and if the issues presented for our review on appeal have been rendered moot by subsequent events, we lose jurisdiction over the appeal, at which point we have no choice but to dismiss it. *See id.* ¶¶ 18–19, 27.

¶34 Whether an appeal is moot turns in part on whether an order granting the requested relief would still be effective. *See id.* ¶ 14 ("An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." (cleaned up)); *Behar v. Johnson*, 2024 UT App 129, ¶ 19, 557 P.3d 607 ("An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants." (cleaned up)).

¶35 Our analysis on this point turns on the fact that Dowhaniuk seeks the same relief in his appeal of the Second Modification

---

Modification Order on mootness grounds, we note here that the statutory jurisdictional issue was squarely addressed in *State v. Stubbs*, 2025 UT App 48, 569 P.3d 250, *petition for cert. filed*, June 11, 2025 (No. 20250646), where we held that a district court's decision to deny a motion to modify and "continue the no bail" order was appealable as of right, *id.* ¶ 18; *see also id.* ¶ 23 ("[E]ven though this is an appeal from a denial of [a] motion to modify, we conclude that we have jurisdiction over this appeal."). In short, we reject the State's assertion that—even absent the mootness issue—we would not have jurisdiction to consider Dowhaniuk's appeal from the Second Modification Order.

Order that he sought in his appeal of the First Modification Order: reinstatement of the Initial Detention Order. Indeed, in his appeal of the Second Modification Order, Dowhaniuk asks us to "set aside the bail modification" "[b]ecause the initial pretrial detention . . . was then modified illegally." Because we have already (in connection with his appeal of the First Modification Order) afforded Dowhaniuk all of the relief he seeks in his appeal of the Second Modification Order, Dowhaniuk's requested relief in the appeal of the Second Modification Order would have "no legal effect." *Utah Transit Auth.*, 2012 UT 75, ¶ 14 (cleaned up). We therefore dismiss Dowhaniuk's appeal of the Second Modification Order as moot, given our disposition of his appeal of the First Modification Order.

CONCLUSION

¶36    In entering the First Modification Order, the district court committed prejudicial procedural error by not affording Dowhaniuk a reasonable opportunity to respond to the State's motion to modify. While Dowhaniuk did not preserve for our review any of the legal theories he now advances on appeal, this is because he was deprived of the opportunity to do so. Given this rare procedural anomaly, exceptional circumstances exist that allow us to consider Dowhaniuk's theories as though they had been preserved. And for the reasons discussed, Dowhaniuk's procedural arguments are meritorious, and his substantive arguments are at least good enough that we can't consider the procedural errors harmless. Accordingly, we vacate the First Modification Order, reinstate the Initial Detention Order, and remand this case to the district court for further proceedings consistent with this opinion. Finally, given our disposition of Dowhaniuk's appeal of the First Modification Order, we dismiss as moot Dowhaniuk's appeal of the Second Modification Order.

_____