**2024 UT App 143**

# THE UTAH COURT OF APPEALS

DAVID MUSSELMAN,
Appellant,
*v.*
KAMRON KEELE,
Appellee.

Opinion
No. 20220893-CA
Filed October 10, 2024

Third District Court, West Jordan Department
The Honorable Matthew Bates
No. 200905061

Julie J. Nelson, Attorney for Appellant

Kamron Keele, Appellee Pro Se

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1　The district court granted Kamron Keele's unopposed motion for partial summary judgment on his claims of tortious interference and fraudulent misrepresentation against David Musselman and entered judgment for Keele in the amount of $166,041.11 after a bench trial on damages. We reverse the judgment without deciding the issues on the merits because, on appeal, Musselman presented a plausible basis for reversal and Keele failed to address any of the issues on the merits, instead choosing only to argue (incorrectly) that this court lacked jurisdiction.

BACKGROUND

¶2      In March 2018, in preparation for a move to Chicago, Kamron Keele, a Utah licensed attorney, began the required preliminary application for admission to the Illinois Bar. While not required to sit for the Illinois Bar's examination, Keele was required to fill out an application and pass the Illinois Bar's character and fitness review. In July 2018, after Keele's preliminary application was approved but before he submitted his formal application, Keele and his family moved from Salt Lake City to Chicago, where he continued working for his Utah clients. Within six months of moving to Chicago, Keele had wound down his Utah practice and began to apply for law firm positions in Chicago. At the time, Keele believed he would be licensed in Illinois by the beginning of 2019.

*The Divorce Case*

¶3      While in Chicago, Keele began representing a client (Husband) in a Utah divorce action. In January 2019, Keele filed Husband's petition for divorce from Wife in Utah's Third District Court. While she was initially able to hire an attorney, Wife soon found she could not afford to pay her attorney, so she let him go. After that, due to Wife's lack of counsel, Keele communicated with her directly, including by email. In his communications with Wife, Keele frequently used harsh and judgmental language including:

- "[P]erhaps you are starting a new manic episode as evidenced by your latest actions."

- "Why you would do that to your child is beyond outrageous."

- "Because of your baffling inability to even comprehend what is at issue in this case and because you have stolen custody of [your

child] and refuse to date to allow [Husband] parent time, among other stunning behavior and written legal positions and admissions you have taken over the last two weeks since I've been involved, [Husband] and I both believe mediation in light of your current delusions would be pointless."

¶4 Due to her inability to pay for an attorney, Wife researched alternatives to litigation, including mediation, and she came across David Musselman, a mediator who specializes in divorce cases. Musselman is not a licensed attorney. At Wife's request, Musselman contacted Husband to see if he would be interested in mediation, but he declined. After learning that Husband was unwilling to mediate, Wife became very emotional and "pleaded with [Musselman] to help" her with the divorce. Musselman provided Wife with some basic forms for divorce litigation and helped her draft an answer and respond to Keele's emails. Musselman did not charge Wife for his assistance.

¶5 Husband discovered Musselman's involvement when he read Wife's emails with Musselman, which Husband was able to do by accessing those emails on a family computer that Wife had failed to log out of before moving out of the marital home. Husband forwarded these emails to Keele, who contacted Musselman about his communications with Wife and told Musselman to cease "advising [Wife]." That same day—February 5, 2019—Wife filed a complaint with the Utah Bar against Keele. Keele reported the bar complaint to the Illinois Bar, as he was required to do, which then placed Keele's Illinois application on hold pending resolution of the Utah Bar complaint. After requesting and receiving Keele's response to Wife's allegations, the Utah Bar notified Keele on July 29, 2019, that it was declining to move forward with the complaint because "there [was] not enough evidence to prove by a preponderance that Mr. Keele's behavior . . . rises to a violation of the Rules of Professional

Conduct." Keele notified the Illinois Bar of the dismissal in August 2019, and the Illinois Bar ultimately approved his application in March 2020. In total, Keele's Illinois Bar application was on hold for approximately six months from February 2019 to August 2019.

### Keele's Illinois Employment

¶6     Between December 2018 and December 2019, before he was licensed in Illinois, Keele applied to over eighty law firms and companies but did not obtain a job offer from any of them. Keele testified that in every interview he had to inform prospective employers that his application to the Illinois Bar was on hold because he was waiting for the Utah Bar complaint to clear up, and he believed that this disclosure and his lack of licensure were the reasons he was not hired. However, Keele also failed to get a job at any of the firms and companies he applied to from December 2018 to February 2019 and from August 2019 to December 2019, both before and after the Utah Bar complaint was pending.

¶7     Ultimately, in December 2019, Keele was hired by a sole practitioner at a salary of $100,000, but he was terminated only a few months later in March 2020. His termination letter cited three reasons for his termination: (1) he prioritized "non-Firm clients over personal clients from Utah," causing him to make "excessive mistakes"; (2) he took "unexcused absences with insufficient notice and insufficient make-up time during tax season for Utah practice," which resulted in "work not being completed in a timely and accurate fashion"; and (3) he was unable "to obtain an Illinois license in a reasonable amount of time."

### The Lawsuit Against Musselman

¶8     In August 2020, Keele filed a lawsuit against Musselman in Utah's Third District Court, alleging tortious interference,

unauthorized practice of law, fraudulent misrepresentation, and negligent misrepresentation. He sought damages of $450,000 in lost income. On November 29, 2020, before Musselman served his initial disclosures, Keele filed a motion for summary judgment "as to all of the elements but damages of [Keele's]'s claims of tortious interference and fraudulent misrepresentation." The district court denied Keele's motion after concluding that material facts—including whether Musselman had advised Wife to file a bar complaint—were in dispute.

¶9      In January 2022, the parties filed the following stipulation with the district court:

> 1. [P]rior to [Wife] filing a bar complaint against [Keele] on February 5, 2019, [Musselman] told [Wife] that, in his opinion, [Keele] was unethical to her as opposing counsel in her divorce case.
>
> 2. [Musselman] told [Wife] prior to February 5, 2019 that she should file a bar complaint against [Keele] for the same.

Keele then filed a renewed motion for summary judgment. Musselman failed to respond to the renewed motion. The district court entered partial summary judgment in Keele's favor on the tortious interference and misrepresentation claims, but reserved for trial "the fact of damages and the specific dollar amount."

¶10      Musselman timely filed a rule 60(b) motion for relief from the district court's grant of partial summary judgment. *See* Utah R. Civ. P. 60(b). In his motion, Musselman claimed his failure to respond to the motion for partial summary judgment was due to excusable neglect because his attorney had an issue receiving emails, and he asserted he had meritorious defenses to Keele's claims. The district court denied Musselman's rule 60(b) motion, ruling that there was no evidence presented to substantiate the alleged email issue and that even if Musselman did present this

evidence, computer glitches do not constitute excusable neglect. The district court also concluded that Musselman did not demonstrate a meritorious defense. Musselman filed a petition for interlocutory appeal of the denial of the rule 60(b) motion, which this court denied.

¶11 On September 12, 2022, the district court held a bench trial on damages. After hearing testimony from Keele and receiving exhibits, including Keele's tax returns and a salary survey from *Chicago Lawyer* magazine, the district court awarded Keele damages for the period from February 2019 to April 2020, totaling $166,041.11.

## ISSUE AND STANDARD OF REVIEW

¶12 Musselman argues the district court erroneously granted Keele partial summary judgment on his tortious interference and fraudulent misrepresentation claims.[1] We review a district court's "grant of summary judgment for correctness," giving "no deference to the district court's legal conclusions." *Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 15, 390 P.3d 314.

## ANALYSIS

### I. Jurisdiction

¶13 Before we can examine Musselman's substantive arguments, we must first address Keele's assertion that this court lacks jurisdiction to review the district court's grant of partial summary judgment and denial of Musselman's rule 60(b) motion

---

1. Musselman also challenges the district court's award of damages to Keele in the amount of $166,041.11. But because we reverse the grant of partial summary judgment, we need not reach the issue of damages.

because Musselman failed to timely appeal these orders. It is well settled that "an appellate court does not have jurisdiction to consider an appeal unless the appeal is taken from a final order or judgment that ends the controversy between the litigants." *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 10, 428 P.3d 1133 (cleaned up). According to Keele, both orders were final appealable orders and because Musselman failed to appeal them within thirty days of entry of each order, this court lacks jurisdiction over the appeal.[2] We disagree.

¶14   A "partial summary judgment is not generally a final judgment and hence it is not appealable" because it does not "dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case." *Alvey Dev. Corp. v. Mackelprang*, 2002 UT App 220, ¶ 18, 51 P.3d 45 (cleaned up); *accord South Shores Concession, Inc. v. State*, 600 P.2d 550, 553 (Utah 1979) (holding that "a partial summary judgment is not generally a final judgment" (cleaned up)). Here, the order granting partial summary judgment did not dispose of the case. The order specifically reserved for trial "the fact of damages and the specific dollar amount of damages." Indeed, a bench trial was held on this remaining issue of damages, so it is clear that the grant of partial summary judgment was not a final order. *See Harrington v. Browne*, 2005 UT App 57U, para. 2 (per curiam) (concluding that a partial summary judgment order that reserves "particular issues for trial" is not a final appealable order). And because this court denied Musselman's petition for interlocutory appeal of the partial summary judgment order, Musselman necessarily had to wait until the district court entered final judgment after the trial on damages before he could appeal the

---

2. We note that in this appeal Musselman did not challenge the denial of his rule 60(b) motion. Therefore, we do not address Keele's jurisdictional argument with respect to that motion.

order.[3] *See Zions First Nat'l Bank, NA v. Rocky Mountain Irrigation Inc.*, 931 P.2d 142, 144 (Utah 1997) (holding that a notice of appeal from the final judgment includes "any intermediate order involving the merits or necessarily affecting the judgment"). Musselman's appeal from the eventual final judgment was timely, and we therefore have jurisdiction to hear his appeal.

## II. The District Court's Grant of Partial Summary Judgment

¶15    "In many situations, a district court has discretion to grant a motion merely because the nonmovant fails to oppose it." *Turley v. Childs*, 2022 UT App 85, ¶ 25, 515 P.3d 942. However, motions for summary judgment do not fall into this category. "Summary judgment may not be entered against the nonmoving party merely by virtue of a failure to oppose, but instead a district court must still determine whether the moving party's pleadings, discovery, and affidavits demonstrate its entitlement to judgment as a matter of law." *Tronson v. Eagar*, 2019 UT App 212, ¶ 17, 457 P.3d 407 (cleaned up); *see also* Utah R. Civ. P. 56(e)(3) (The district court may only "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it.").

¶16    When a party fails to dispute a material fact in a motion for summary judgment by failing to respond to the motion, the facts are "deemed admitted for the purposes of the motion." Utah R. Civ. P. 56(a)(4). However, the court "must still view all reasonable inferences drawn from those admitted facts in the light most favorable to the non-moving party." *Turley*, 2022 UT App 85, ¶ 26 (cleaned up). "And where the moving party would bear the burden of proof at trial, the movant must establish each element

---

3. Musselman's notice of appeal expressly included both the final judgment and the partial summary judgment order.

of his claim in order to show that he is entitled to judgment as a matter of law." *Id.* ¶ 27 (cleaned up).

¶17 A district court's assessment of an unopposed summary judgment motion is "not intended to be particularly searching." *Id.* ¶ 28. If, after review, "it appears to the court that the movant has connected the relevant dots—that is, that the moving papers recite supported facts which, taken as true, appear to entitle the movant to relief under applicable law—then the motion should be granted." *Id.* But if "it is not apparent to the [district] court that the movant is entitled to judgment as a matter of law, the motion should be denied, despite its unopposed status." *Id*. Here, the district court granted Keele's motion, concluding that Keele had "met his burden of proving all of the elements but the fact of damages."

¶18 Musselman argues the district court erred in its grant of partial summary judgment because material facts were still in dispute and because Keele did not meet his burden of proving the elements of his tortious interference and fraudulent misrepresentation claims. Typically, we would address this argument in the manner laid out in *Turley* and assess the district court's decision "for correctness." *Id.* ¶ 30. However, the situation is different here because on appeal Keele has entirely failed to respond or present any opposing argument on these issues in his responsive brief. *See Mitchell v. Arco Indus. Sales*, 2023 UT App 70, ¶ 21, 533 P.3d 394, *cert. denied*, 537 P.3d 1016 (Utah 2023).

¶19 Instead of engaging with the merits of Musselman's appellate arguments regarding the district court's decision to grant partial summary judgment, Keele focuses his responsive brief exclusively on his arguments that this court lacks jurisdiction because Musselman's appeal was untimely and that damages were correctly determined. Musselman's arguments on the merits of the grant of partial summary judgment were left completely unrebutted by Keele. And while an appellee and his counsel (of

which Keele is both in this case) certainly have the choice to forgo addressing arguments raised by appellants, they do so at their own peril. Because if the sole opposing argument presented turns out to be incorrect (as Keele's jurisdictional argument did here), the appellant's arguments stand unrebutted and we then review them with a "lower standard than the typical burden of persuasion on appeal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76.

¶20    Indeed, our supreme court has held that a "court may rule in favor of an appellant for purposes of that case if the appellee inadequately briefs an argument and the appellant provides a plausible basis for reversal." *Utah Dep't of Transp. v. Coalt, Inc.*, 2020 UT 58, ¶ 45, 472 P.3d 942. Because Keele failed to address Musselman's arguments on the merits, we therefore determine only whether Musselman has presented a plausible basis for reversal of the court's grant of partial summary judgment on the tortious interference and fraudulent misrepresentation claims.[4]

A.    Tortious Interference

¶21    "To recover damages for tortious interference a plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 13, 345 P.3d 553 (cleaned up). Because Musselman argues Keele did not provide undisputed evidence to support any of these elements, we address each in turn.

---

4. Our decision rendered under this standard "is a non-merits decision that is not intended to have any precedential value." *Mitchell v. Arco Indus. Sales*, 2023 UT App 70, ¶ 22 n.2, 533 P.3d 394 (cleaned up), *cert. denied*, 537 P.3d 1016 (Utah 2023).

1.     Intentional Interference

¶22    A plaintiff must prove the defendant *"intentionally* interfered with the plaintiff's existing or potential economic relations" to recover for a tortious interference claim. *Id*. ¶ 66 (cleaned up). "Intent and motive are not synonymous; in the tort context, 'intent' means a desire to bring about certain consequences, not a person's reasons for that desire." *Id.* In the complaint, Keele alleged that "Musselman intentionally advised Wife that [Keele]'s actions were unethical and that a bar complaint against him was in order; with the expectancy of causing [Keele] to have to defend himself in the hopes that [Keele] would be distracted from fully representing his client against her."

¶23    Musselman argues that intending to have Wife file a bar complaint against Keele is not the same as intending to tortiously interfere with Keele's potential economic relations. Musselman further argues that Keele presented no evidence that Musselman knew of Keele's move to Chicago or of his interviews with law firms, and Musselman stated in his answer that he had "no knowledge of [Keele]'s employment, living, or family situation." Thus, Musselman presents a plausible argument that Keele did not prove—or even allege—that Musselman intentionally interfered with Keele's potential economic relations with Chicago-area law firms.

2.     Improper Means

¶24    In addition to proving that Musselman intentionally interfered with Keele's potential economic relationships, Keele must also show that Musselman used improper means to do so. *See C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 41, 437 P.3d 343. "Improper means is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules or if they violate an established standard of a trade or

profession." *Id.* ¶ 3 (cleaned up). For a violation of a trade or profession's established standards to be an improper means, "the standard or rule" violated "must be an objective one accepted throughout the relevant industry." *Id.* Establishing this industry standard can be accomplished with "expert testimony regarding industry-wide customs or practices, uniform codes, [or] industry-specific regulations." *Id.* ¶ 48.

¶25 In his motion, Keele asserted that Musselman had been practicing law without a license in violation of Utah law. Keele argued Musselman unlawfully practiced law by "giving [Wife] legal litigation advice that [Keele] had violated the Court's ethical rules and that she should file a bar complaint against him." "The practice of law . . . involve[s] the rendering of services that require the knowledge and application of legal principles to serve the interests of another . . . [and] consists of performing services in the courts of justice[,] . . . counseling, advising, and assisting others in connection with their legal rights, duties, and liabilities." *Board of Comm'rs of the Utah State Bar v. Peterson*, 937 P.2d 1263, 1268 (Utah 1997) (cleaned up). Musselman argues that informing Wife that Keele's behavior potentially warranted a bar complaint does not involve "knowledge and application of legal principles," *see id.* (cleaned up), particularly because he was merely expressing his opinion. And, he argues, non-lawyers can express an opinion about whether an attorney has potentially violated ethical rules. For support, Musselman points out that non-attorneys are on the committee tasked with hearing "cases against lawyers . . . for violations of the Rules of Professional Conduct" in Utah. *See Ethics & Discipline Committee*, Utah State Bar, https://www.utahbar.org/ethics-discipline-committee/ [https://perma.cc/3XLF-LGWM] (stating that the committee "consists of lawyers and members of the public").

¶26 Keele also asserted in his motion that Musselman used improper means because he violated professional standards. The only professional standards that Keele mentions in his motion are

the "standards of the profession of an attorney," which Musselman argues would not apply to him as he is not an attorney and therefore not subject to these standards. Musselman also argues that Keele failed to establish what objective standards Musselman violated, either through expert testimony or otherwise. *See C.R. England*, 2019 UT 8, ¶ 48. Musselman has therefore plausibly demonstrated that Keele did not prove that Musselman used "improper means" when he told Wife to file a bar complaint.

3.      Causation

¶27     A plaintiff must prove causation to recover damages for tortious interference. *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 13, 345 P.3d 553. To prove causation, the plaintiff must present evidence of a causal link between the alleged tortious interference and the harm. *See Francis v. National DME*, 2015 UT App 119, ¶ 48, 350 P.3d 615. Accordingly, Musselman argues, Keele needed to prove that it was Wife's bar complaint that prevented him from receiving a job at any of the firms or companies that he interviewed with.[5] But Keele provided no evidence that, without the bar complaint against him, he would have been offered a job. He testified that interviewers told him that he needed to be admitted to practice law in Illinois, but he offered no testimony or documents from any interviewer or firm to support that his lack of an Illinois license was the reason he was not offered a job. Further, many of the firms Keele listed regularly hire unlicensed law students for the entry-level associate positions that Keele stated he was willing to accept. And, Musselman points out, Keele was eventually able to obtain

---

5. Musselman disputes on appeal whether Wife filed the bar complaint because he told her to do so, but that factual dispute was not before the district court when it ruled on the motion for partial summary judgment, so we do not consider it here. *See Turley v. Childs*, 2022 UT App 85, ¶ 31, 515 P.3d 942.

employment in Chicago without an Illinois license.[6] Therefore, Musselman has plausibly shown that Keele failed to demonstrate the required causal relationship between Musselman's conduct and Keele's inability to obtain employment.

¶28 In sum, Musselman has presented a plausible basis for reversal of the grant of summary judgment on each of the elements of Keele's tortious interference claim.

B. Fraudulent Misrepresentation

¶29 To recover damages for fraudulent misrepresentation the plaintiff must establish as follows:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) *to that party's* injury and damage.

*Cardon v. Jean Brown Rsch.*, 2014 UT App 35, ¶ 6, 327 P.3d 22 (emphasis added) (cleaned up). Musselman argues that Keele is not the proper party to bring this claim of fraudulent misrepresentation because Keele does not allege Musselman made any fraudulent representations to him; instead, the alleged misrepresentations in this case were made to Wife, a third party.

---

6. Keele was terminated from that employment within a few months. Keele asserts that he was terminated for not having an Illinois bar license. Although that was listed as one of the reasons in his termination letter, it was the third reason, behind his poor performance and absenteeism. *See supra* ¶ 7.

But Keele must demonstrate that he, himself, relied on the fraudulent misrepresentation and that this reliance induced him to act to his own injury. *Id.*; *see also State v. Apotex Corp.*, 2012 UT 36, ¶ 58, 282 P.3d 66. Keele instead asserts Musselman recklessly made a false representation concerning a present, material fact to Wife to induce Wife to act on it and file a bar complaint, which she did. However, Musselman argues that Wife is the party that the alleged fraudulent misrepresentation was made to, not Keele, demonstrating that Keele is not the correct party to bring this claim. Thus, Musselman has plausibly demonstrated that Keele failed to prove the required elements of his fraudulent misrepresentation claim.

¶30    For the preceding reasons, we conclude that Musselman has met his lowered burden of demonstrating a plausible basis to reverse the grant of partial summary judgment on both of Keele's substantive claims.

## CONCLUSION

¶31    This court has jurisdiction over Musselman's appeal. Keele failed to address Musselman's arguments for reversal of the grant of partial summary judgment and, applying the resulting lower standard of review, Musselman has demonstrated a plausible basis for reversal. Accordingly, we reverse the grant of partial summary judgment and remand the matter for further proceedings.

—————