2026 UT App 85

# THE UTAH COURT OF APPEALS

JOHN B. ALLEMAN,
Petitioner,

*v.*

THE HONORABLE CHRISTINE JOHNSON AND APRIL SLAUGHTER,
Respondents.

APRIL SLAUGHTER,
Appellee,

*v.*

JOHN B. ALLEMAN,
Appellant.

Opinion
No. 20250180-CA
Filed May 29, 2026

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 214402024

Rodney R. Parker, Attorney for Petitioner and
Appellant John B. Alleman

David G. Turcotte, Attorney for Respondent and
Appellee April Slaughter

Stacy R. Haacke, Attorney for Respondent
The Honorable Christine S. Johnson

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

TENNEY, Judge:

¶1   April Slaughter and John G. Alleman began divorce
proceedings in 2021. In 2024, they entered into a settlement

agreement to resolve the division of their marital estate, and the district court soon issued a divorce decree consistent with that agreement. The decree awarded the parties' marital residence to Alleman along with various other items, and in a separate provision, it ordered Alleman to pay a sum of money to Slaughter to balance out the division of the marital estate.

¶2 Alleman died before the parties had performed their respective obligations. After Alleman's death, his father, John B. Alleman (Special Administrator), was appointed to act as the special administrator of Alleman's estate.[1] When Special Administrator tendered the required money to Slaughter, Slaughter refused to transfer ownership of the marital residence to Alleman's estate.

¶3 Through counsel, Special Administrator filed a motion to enforce the divorce decree, and he later filed a motion to substitute, wherein he sought leave to appear as a party on behalf of Alleman's estate. Slaughter opposed both motions, and she also filed a motion for summary judgment, asserting that because Alleman had not paid the required money before he died, the marital residence was now hers. The district court granted Slaughter's motion for summary judgment and awarded the marital residence to Slaughter. It also awarded attorney fees to Slaughter, concluding that Slaughter was the prevailing party. After ruling in Slaughter's favor on the summary judgment motion, the court denied Special Administrator's motion to substitute, concluding that it was now moot.

---

1. For clarity, we note that John B. Alleman (who is listed in the caption as the Petitioner and the Appellant) is the father of John G. Alleman, who has passed away. Moving forward, we'll refer to John G. Alleman as "Alleman," and as indicated, we'll refer to John B. Alleman as "Special Administrator."

¶4 Special Administrator has filed both a petition for extraordinary relief and an appeal, wherein he challenges various rulings from the district court. For the reasons set forth below, we conclude that:

- Special Administrator's petition for extraordinary relief is procedurally proper insofar as, under the circumstances of this case, Special Administrator has no other plain or adequate way in which to assert the rights of Alleman's estate;

- the district court erred in granting summary judgment to Slaughter and that ruling must therefore be vacated; and

- insofar as the attorney fees award and the denial of the motion to substitute were based on the summary judgment ruling, they must now be vacated too.

BACKGROUND

¶5 Slaughter and Alleman were married in October 2019, and in July 2021, Slaughter filed a petition for divorce. The couple did not have any children together, so the divorce proceedings focused on how to divide the marital estate. One of the main assets was a house that Slaughter and Alleman had acquired during the marriage (the marital residence), which they held in joint tenancy.

*The Settlement Agreement and the Divorce Decree*

¶6 On March 4, 2024, Slaughter and Alleman entered into a settlement agreement (the Agreement). On March 5, 2024, the district court issued Findings of Fact and Conclusions of Law in which it "approve[d]" the Agreement "as equitable and just." That same day, the court issued a divorce decree (the Decree) that

distributed the parties' assets pursuant to the terms outlined in the Agreement.

¶7     The Decree included the following provision:

4. <u>Property Division.</u> The parties' real and personal property shall be divided as follows:

a.  To [Slaughter]:

(1) Her vehicle;

(2) Personal property in her possession, except as limited below;

(3) Furnishings in the marital residence (except that major appliances shall stay with the residence); and

(4) All financial accounts in her name.

b.  To [Alleman]:

(1) His vehicle;

(2) The marital residence[2] . . . ;

(3) The [Salt Lake] residence . . . ;

(4) Personal property in his possession;

(5) His pinball machine, slot machine, and coin collection, located in the marital residence; and

---

2. This is the same house that we've referred to as "the marital residence."

(6) All financial accounts in his name.

c. In order to equalize division of the marital estate, [Alleman] shall pay [Slaughter] $200,000 on or before May 31, 2024.

. . . .

f. [Slaughter] agrees that, upon receipt of the $200,000 payment described above, she will immediately quitclaim the [marital residence] to [Alleman], although she will retain the right to remain in the residence until May 31, 2024.

*Alleman's Death and the Motion to Enforce*

¶8 On April 24, 2024, Alleman died by suicide. At the time of his death, Alleman had not tendered the $200,000 payment to Slaughter. On May 24, 2024, Alleman's father was appointed as the special administrator of Alleman's estate.[3] On May 31, 2024, he tendered payment of the $200,000 to Slaughter's counsel, but Slaughter's counsel told him that Slaughter was refusing to accept the money or sign a quitclaim deed transferring ownership of the marital residence to Alleman's estate.

¶9 On June 25, 2024, and pursuant to rule 7B of the Utah Rules of Civil Procedure, Special Administrator filed an ex parte motion to enforce "paragraph 4 of the . . . Decree." Special Administrator argued that the Agreement was "an enforceable contract" and that the Decree "incorporate[d] the requirement that [Slaughter] convey" the marital residence to Alleman. Special Administrator argued that Slaughter's refusal to accept the payment and sign the

---

3. There does not appear to be any dispute that Alleman's father was properly appointed as the special administrator.

quitclaim deed was "a blatant and deliberate breach of the [A]greement" and "also contempt of the [D]ecree." Special Administrator sought (1) a determination that Slaughter was "in contempt of paragraph 4 of the Decree," (2) an "order requiring [Slaughter] to vacate the [marital] residence forthwith," (3) an "order requiring [Slaughter] to pay the fair rental value of $2,900 per month for the period of time she . . . wrongfully retained possession," and (4) attorney fees "pursuant to the [D]ecree" and under Utah Code section 81-1-203(2).

¶10　In response, Slaughter filed an "Objection" and a "Counter-Motion for relief," wherein she sought denial of the motion to enforce and "a summary Order awarding her sole legal ownership and possession" of the marital residence. There, Slaughter advanced essentially two main arguments. First, Slaughter asserted that because the marital residence had been held in joint tenancy "with full rights of survivorship," it "would automatically pass to [her] upon [Alleman's] death." Slaughter claimed that because Alleman had not paid her the $200,000 before his death, the marital residence had "automatically transfer[red]" to her at the time of his death, thus "circumventing the Decree and his estate entirely." Because of this, she further argued that Special Administrator could not "try to step into [Alleman's] living shoes, . . . act for him when he chose not to, [and] attempt to subvert what he actually did." Second, in what seems to have been something of an alternative argument, Slaughter asserted that even if Special Administrator could act on Alleman's behalf, Special Administrator's May 31 tender was invalid because Special Administrator had never delivered the $200,000 to her "personally" or to her address as she had allegedly requested through counsel. Either way, Slaughter asserted that because the $200,000 had not been paid by Alleman or properly paid by Special Administrator, the marital residence was now hers.

¶11    Special Administrator filed a reply in which he asserted that the Decree had "*unconditionally* award[ed] the marital residence" to Alleman. (Emphasis in original.) Special Administrator also asserted that "[n]othing in the [D]ecree" gave Slaughter "the right to retain ownership of the [marital residence]" and that Alleman had become "the sole owner" of the marital residence "when the court signed the [D]ecree." Special Administrator further argued that "even if [Alleman] had not tendered the money before May 31, [Slaughter's] remedy would be to seek enforcement of the payment requirement." Finally, Special Administrator argued that the May 31 tender had indeed been "timely and effective."

¶12    On the same day that Special Administrator filed this reply, he also filed a Suggestion of Death and a Motion to Substitute. The motion to substitute was filed pursuant to rule 25(a) of the Utah Rules of Civil Procedure, and it requested that Special Administrator "be substituted for [Alleman] in this action" because the "property awards in the [D]ecree . . . survive[d]" Alleman's death and were "enforceable in the divorce action."

*Slaughter's Motion for Summary Judgment*

¶13    Slaughter subsequently filed a "Motion & Memorandum in Support of Request for Summary Judgment and Final Order." In this filing, Slaughter made arguments consistent with those that she had made in her opposition to the motion to enforce. Slaughter asserted that the "Decree, without an additional written deed signed by Slaughter," had failed "to sever the Joint Tenancy" on the marital residence. She also asserted that because the joint tenancy had "remained in effect at the time [Alleman] . . . died, [his] undivided interest passed" to Slaughter and had not become part of his estate. And Slaughter further argued Special Administrator had no "standing to pursue a claim to the [marital residence]." She thus asked the court to (1) deny Special

Administrator's motion to enforce "and all related claims" and (2) issue an order declaring the marital residence to be the "sole and exclusive property of Slaughter, outside the scope of the estate of [Alleman] . . . and the powers of [Special Administrator]."

¶14 In response, Special Administrator filed a motion to strike, asserting that Slaughter had "filed a procedurally improper motion for summary judgment" and that the motion was "substantively without merit." In Special Administrator's view, because the court had previously issued the Decree, and because the case was now "before the court on a motion to enforce the [D]ecree," there was "no place for summary judgment in the present procedural posture of the case."

¶15 On October 23, 2024, and without having held arguments on any of the above motions, the district court issued a written decision granting Slaughter's motion for summary judgment. In key part, the court reasoned that "after service of" the motion for summary judgment, Special Administrator had "failed to timely defend, respond, request argument or seek any hearing to contest the factual and legal claims made by [Slaughter] in the Motion." As a result, the court concluded, "[T]he factual and legal claims set forth in the Motion are undisputed and summary judgment is appropriate."

¶16 Based on what it regarded as the undisputed facts, the court then ruled that

- the marital residence had been "held in Joint Tenancy with rights of survivorship throughout the duration of the Parties['] marriage";

- under Utah law, "when a joint tenant passes away, their undivided interest . . . automatically transfers to the surviving joint tenant, avoiding probate"; and

- "at no time post the entry of the . . . Decree and prior to his death did [Alleman] act to pay the $200,000 required to equalize the marital estate and compel [Slaughter] to transfer the [marital residence] to him," and, "to date, [Slaughter] has received . . . no payments from [Special Administrator] as the executor of [Alleman's] estate."

The court thus ruled that the marital residence was "not subject to probate" and that Slaughter was "the sole and exclusive owner" of it. Because the court had granted summary judgment to Slaughter, the court then ruled that the motion to enforce that had been filed by Special Administrator was "now moot and therefore denied." Finally, the court awarded Slaughter attorney fees under Utah Code section 81-1-203(2).

*Special Administrator's Motion to Reconsider and Subsequent Rulings from the District Court*

¶17 On the same day that the court issued its ruling on the summary judgment motion, Special Administrator filed a "Motion to Reconsider and Set Aside Summary Judgment." Special Administrator asserted that the ruling was "inconsistent with Utah law," pointing to Utah Code section 75-2-804(2), which states that

> a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment . . . severs the interests of the former spouses in property held by them at the time of the divorce or annulment as joint tenants with the right of survivorship, transforming the interests of the former spouses into tenancies in common.

Special Administrator argued that upon entry of the Decree, the joint tenancy had converted to a tenancy in common, and Special Administrator then argued that under the terms of the Decree,

Slaughter's interest as a tenant in common had been awarded to Alleman. Special Administrator also asserted that Slaughter's motion for summary judgment was "procedurally improper." This was so, in Special Administrator's view, because Slaughter was "seeking affirmative relief that [was] not supported by any pleading or claim."

¶18 On December 17, 2024, the court held a hearing on the motion to reconsider. At the close of the hearing, the court issued an oral ruling denying the motion and asking Slaughter's counsel to prepare the final order. The court also denied Special Administrator's motion to substitute as moot. On January 9, 2025, the court entered an attorney fees award "against [Special Administrator] as the executor of the [Alleman] estate" in the amount of $20,700.

*The Petition for Extraordinary Relief, Further Ruling from the District Court, and the Direct Appeal*

¶19 On January 10, 2025, Special Administrator filed a petition for extraordinary relief with this court, arguing that the district court had

> exceeded its jurisdiction and abused its discretion by (1) its erroneous refusal to grant Special Administrator's motion to be substituted as a party to the divorce action; (2) its improper summary judgment ruling modifying the [Decree] without a petition to modify and awarding [Slaughter] real property belonging to [Alleman's] estate; and (3) its award of attorney[] fees against [Special Administrator] despite having denied [his] request to appear as a party, and thus having no jurisdiction over [him].

¶20 On January 13, 2025, the district court issued a written order denying the motion to reconsider. In that order, the court

reiterated its views that Special Administrator had not filed "a timely or proper objection" to Slaughter's motion for summary judgment and that this failure "required that the [c]ourt accept as true all of the undisputed factual allegations" in Slaughter's motion. The court then ruled that even if Special Administrator's motion to strike was "accepted late as a responsive pleading," Special Administrator had "failed to offer facts sufficient to create a genuine issue of material fact to avoid the [c]ourt's award of Summary Judgment." Finally, the court denied Special Administrator's motion to substitute "on the grounds that it is now moot."

¶21   Special Administrator subsequently filed an appeal from the court's order granting summary judgment and its order denying the motion to reconsider. On March 7, 2025, this court consolidated Special Administrator's petition for extraordinary relief with his appeal.

ISSUE AND STANDARD OF REVIEW

¶22   Through both the petition for extraordinary relief and the direct appeal, Special Administrator challenges a number of the district court's rulings. For reasons explained more fully below, we conclude that the challenge to the summary judgment ruling is dispositive. "We review a district court's grant of summary judgment for correctness, giving no deference to the district court's legal conclusions." *Musselman v. Keele*, 2024 UT App 143, ¶ 12, 559 P.3d 64 (quotation simplified).

ANALYSIS

I. The Nature of Our Review

¶23   As noted, Special Administrator filed both a petition for extraordinary relief and a direct appeal. In the appellate briefing

and oral argument, Special Administrator and Slaughter have disputed the extent to which either path is available in this case. Before addressing the merits of the various rulings, we first explain the nature of our review.

¶24   Rule 19 of the Utah Rules of Appellate Procedure provides that "[w]hen no other plain, speedy, or adequate remedy is available, a person may petition an appellate court for extraordinary relief referred to in Rule 65B of the Utah Rules of Civil Procedure." Utah R. App. P. 19(a); *see also* Utah R. Civ. P. 65B(a). Our supreme court has previously noted that in some cases, the "reason for seeking appellate review" by way of a petition for extraordinary relief is "because the petitioner was not a party below and cannot appeal." *Society of Pro. Journalists, Utah Chapter v. Bullock*, 743 P.2d 1166, 1172 (Utah 1987); *see also Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 9, 293 P.3d 241 ("[P]ersons or entities that are not parties to a proceeding are not entitled to an appeal as of right."). In such cases, the nonparty's pursuit of extraordinary relief "is procedurally correct" because the nonparty "has no alternative course to follow." *Society of Pro. Journalists*, 743 P.2d at 1168 n.1; *see also Utah Down Syndrome Found.*, 2012 UT 86, ¶ 10 (noting that because "nonparties are not entitled to an appeal as of right," a "nonparty who seeks relief from a lower court's order that purports to affect the nonparty's interests must proceed by way of" a petition for extraordinary relief).

¶25   Turning to the dispute in this case, we note that it's settled in Utah that "a court order dealing with marital property survives the death of a spouse." *Porenta v. Porenta*, 2017 UT 78, ¶ 18, 416 P.3d 487. Thus, if a divorce decree was entered and it settled the parties' "property rights," that decree "remains effective" even if one of the spouses dies "after the entry of" the decree, and this is so even if an appeal from that decree was pending at the time of the spouse's death. *Id.* ¶ 20 (quotation simplified); *see also Mower*

*v. Mower*, 2023 UT App 10, ¶¶ 12–14, 525 P.3d 110 (holding that under *Porenta*, an order "determining the property rights of the parties" does "not abate on the spouse's death"). Applied here, this means that the provisions from the Decree that settled the property distribution of the marital estate remained effective even after Alleman's death.

¶26   As also noted, however, a dispute has now arisen between Special Administrator (who is acting on behalf of Alleman's estate) and Slaughter about those provisions. In the summary judgment ruling, the district court sided with Slaughter, ruling that Alleman's estate has no rights to the marital residence. But because the court also denied Special Administrator's motion to substitute, this deprived Special Administrator of party status, which means that Special Administrator has no right to appeal the summary judgment ruling. We accordingly exercise our discretion to grant Special Administrator's petition for extraordinary relief, *see Anderson v. Bates*, 2025 UT 51, ¶ 34, 582 P.3d 728, and we review Special Administrator's challenge to the summary judgment ruling on that basis.

¶27   We do note that a nonparty *can* appeal an order denying a motion to substitute. *See Marriott v. Wilhelmsen*, 2025 UT 35, ¶ 1 n.1, 575 P.3d 1106 (noting that the personal representative of the deceased plaintiff was the "proper appellant before this court" when the issue being appealed was "the denial of a motion to substitute" the "personal representative as plaintiff in [the] litigation"); *cf. Tillotson v. Meerkerk*, 2015 UT App 142, ¶ 11, 353 P.3d 165 ("An order denying a motion to intervene is a final disposition of the claims asserted by the applicant for intervention and is appealable."). Given this, we conclude that we can review Special Administrator's challenge to the denial of the motion to substitute as part of the direct appeal.

## II. Summary Judgment

¶28 Special Administrator challenges the district court's decision to grant Slaughter's motion for summary judgment. We agree that this ruling was erroneous. This is so for two reasons.[4]

¶29 First, much of the district court's ruling was driven by its conclusion that Slaughter's motion was "unopposed." In the court's view, because Special Administrator "failed to timely defend, respond, request argument or seek any hearing to contest the factual and legal claims made by [Slaughter] in the Motion," the "factual and legal claims set forth in the Motion" were undisputed and summary judgment was therefore "appropriate."

---

4. As an initial matter, we note that Special Administrator has argued that this was not a procedurally proper motion for Slaughter to have filed at all. Again, the Decree awarded the marital residence to Alleman, after which, following Special Administrator's motion to enforce the Decree, Slaughter filed a "Counter-Motion for relief" and a request for summary judgment. There, she asked the court to "dismiss[] all claims made by [Special Administrator]" and "issue an Order declaring" the marital residence to be her "sole and exclusive property" and thus "outside the scope of the estate of [Alleman] and the powers of [Special Administrator]." Although a touch unclear, it seems that Slaughter was asking for summary judgment on both her opposition to Special Administrator's motion to enforce and her own request for an order declaring that she was entitled to the marital residence as a matter of law. While we note the procedural oddity of filing a motion for summary judgment in the context of an enforcement proceeding, we need not definitively determine whether this request was procedurally permissible. Instead, because the summary judgment ruling was predicated on an incorrect legal interpretation of the Decree, we vacate it for that reason alone.

¶30   Under the controlling rule, however, a district court should grant a motion for summary judgment only "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). As we have recently explained, "even where a summary judgment motion stands unopposed, a district court is still obligated to examine the filed motion, and the court must still determine whether the moving party's pleadings, discovery, and affidavits demonstrate its entitlement to judgment as a matter of law." *Duffin v. Duffin*, 2024 UT App 154, ¶ 39, 560 P.3d 807 (quotation simplified); *see also Musselman v. Keele*, 2024 UT App 143, ¶ 15, 559 P.3d 64 ("Summary judgment may not be entered against the nonmoving party merely by virtue of a failure to oppose . . . ." (quotation simplified)). Thus, to the extent that the court's ruling was based on Special Administrator's non-opposition, it was erroneous.[5]

---

5. We note that as a practical matter, the district court was incorrect when it asserted that Slaughter's summary judgment motion was "unopposed." As indicated, Special Administrator filed a motion to strike that motion, arguing that it was "procedurally improper" and "substantively without merit." And as discussed more fully below, we also point out that as a procedural matter, it's not clear that Special Administrator could have filed a formal opposition. While the parties and the district court had acted as if Special Administrator was properly involved in the case, the court had not ruled on the motion to substitute at the time that the summary judgment motion was filed—and, indeed, the court later denied that motion to substitute. But our supreme court has ruled that "acquiescence of [a party] is insufficient to confer jurisdiction on the court." *Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 24, 293 P.3d 241 (quotation simplified); *cf. Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 5, 469 P.3d 989 ("Our

(continued…)

¶31 Second, even on its own terms, we disagree with the district court's conclusion that Slaughter was entitled to relief. A divorce decree that "resolve[s] the controversy between the parties and conclude[s] the divorce litigation" becomes a final, enforceable judgment when it is entered. *Copier v. Copier*, 939 P.2d 202, 203 (Utah Ct. App. 1997). Because of this, "proceedings to modify a divorce decree must be commenced by filing a petition to modify." *Elder v. Elder*, 2024 UT App 68, ¶ 15, 550 P.3d 488 (quotation simplified); *see also Potts v. Potts*, 2018 UT App 169, ¶ 21, 436 P.3d 263 ("Where there is no petition for modification of the decree itself, the court does not bear the responsibility of re-weighing the equities for the parties after they have assented to the decree; the court's responsibility is to enforce the provisions of the decree as they exist.").

¶32 Here, however, Slaughter claims that she was not required to file a petition to modify the Decree. According to Slaughter, even without a petition to modify, she was legally entitled to the marital residence because of how that residence was owned and because of how the Decree was structured.

¶33 Slaughter's arguments largely hinge on the fact that the marital residence had been held in joint tenancy. In Slaughter's view, the Decree did not unconditionally award the marital

---

rules of civil procedure do not permit [a nonparty] to make itself a party to an ongoing action simply by declaring it so.").

As a result, when the district court faulted Special Administrator for failing to respond to Slaughter's summary judgment motion or even seek a hearing on it, the court was doing so even though Special Administrator did not have party status at that time. To avoid procedural and jurisdictional oddities such as this one, we encourage courts in future cases to resolve any motions relating to party status before ruling on motions regarding the underlying substantive issues that may affect the interests of those potential parties.

residence to Alleman; instead, Slaughter claims that the provision awarding the marital residence to Alleman was conditional upon Alleman paying Slaughter $200,000 before May 31, 2024. Because this had not occurred by the time of Alleman's death, Slaughter claims that she retained ownership of the marital residence as a surviving joint tenant and the residence did not belong to Alleman's estate. We disagree.

¶34    Utah Code section 75-2-804(2)(b) states that

> [e]xcept as provided by the *express terms* of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals . . . , the divorce or annulment of a marriage . . . severs the interests of the former spouses in property held by them at the time of divorce . . . as joint tenants with the right of survivorship, transforming the interests of the former spouses into tenancies in common.

(Emphasis added.) Here, we see no "express term" from the Decree that states that the joint tenancy in the marital residence was not being severed. Slaughter's argument fails for this reason alone.

¶35    Regardless, we read the Decree differently than Slaughter and the district court. As noted, the introductory language to paragraph 4 of the Decree stated that the parties' property "shall be divided as follows," after which paragraphs 4(a) and 4(b) separately set forth what property was awarded to Slaughter and what property was awarded to Alleman. In paragraph 4(b)—which was the paragraph that identified the property that was awarded to Alleman—the Decree stated that Alleman was awarded "[t]he marital residence." Then, paragraph 4(c) stated that "[i]n order to equalize division of the marital estate, [Alleman] shall pay [Slaughter] $200,000 on or before May 31, 2024." And finally, paragraph 4(f) stated that "upon receipt of the

$200,000 payment described above," Slaughter was required to "immediately quitclaim the [marital residence] to [Alleman], although she [would] retain the right to remain in the residence until May 31, 2024."

¶36 We think it's significant that paragraph 4(c) did not link Alleman's obligation to pay Slaughter $200,000 to the parties' ownership interests in the marital residence itself. Rather, it more broadly stated that the $200,000 payment was intended to "equalize division *of the marital estate.*" (Emphasis added.) And the Decree then made no effort to determine how much of the $200,000 was linked to the marital residence as opposed to any other item of property that had been awarded to Alleman. As a result, if it were true that the provision awarding the marital residence to Alleman was somehow conditional on his payment of the $200,000, it would also seem true that any non-payment from Alleman would seemingly affect his interest in the other items too.

¶37 But the "purpose of divorce is to end marriage and allow the parties to make as much of a clean break from each other as is reasonably possible." *Gardner v. Gardner*, 748 P.2d 1076, 1079 (Utah 1988). For this reason, in a domestic case, a district court has a "responsibility to equitably distribute marital property with a view toward allowing each party to go forward with his or her separate life." *Merrill v. Merrill*, 2024 UT App 125, ¶ 73, 556 P.3d 1070 (quotation simplified). In light of these foundational principles, as well as the plain language of the Decree itself, we think the best reading of paragraph 4 is straightforward: as it stated at the outset, it was a "property division" provision, and it awarded some items of marital property (including the marital residence) to Alleman and others (including $200,000) to Slaughter. We don't regard this provision as having put forward a scheme whereby the division of the marital assets was in any way conditional, such that the carefully prescribed division of assets would somehow be undone if one party did not comply

with his or her own obligations. While paragraph 4(f) did state that, "upon receipt of the $200,000 payment," Slaughter was required to "immediately quitclaim the [marital residence] to [Alleman]," we view this as a sequence-of-performance provision, as opposed to being a provision that could conditionally nullify the otherwise carefully-delineated division of the various marital assets.

¶38   Because of this, we conclude that by operation of law, the joint tenancy was severed at the time the court issued the Decree. From that point forward, the parties' interests had been transformed into tenancies in common, Slaughter's interest in the marital residence as a tenant in common had been awarded to Alleman, and Slaughter was obligated to perform by signing a quitclaim deed once Alleman performed by paying her the $200,000. As discussed above, this remained so even though Alleman passed away after the Decree was entered. *See Porenta*, 2017 UT 78, ¶¶ 18, 20. And if Alleman (or, as it turns out, his estate) did not pay the $200,000 that he was required to pay, Slaughter's remedy would be to bring an enforcement action of her own to obtain payment of the money she was owed. But nothing in the Decree said that Slaughter would continue to have a remaining ownership interest in the marital residence, much less that she would have a joint tenancy if Alleman did not perform his obligations. Simply put, after issuance of the Decree, the only remaining question was *when*—not *whether*—Slaughter would officially transfer her interest as a tenant in common.

¶39   In short, because the district court's summary judgment ruling was premised on its incorrect legal conclusion that a joint tenancy remained, we reverse it.[6]

---

6. As discussed, the parties also disputed whether the Special Administrator's tender was legally effective. But as we

(continued…)

### III. Remaining Rulings

¶40    Special Administrator also challenges the district court's rulings that (A) awarded attorney fees to Slaughter and (B) denied Special Administrator's motion to substitute.

### A.    Attorney Fees

¶41    As noted, in conjunction with its ruling granting Slaughter's motion for summary judgment, the district court awarded Slaughter attorney fees against Special Administrator under Utah Code section 81-1-203(2), which provided that in an "action to enforce . . . [a] division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense."

---

understand it, the district court's ruling was premised on its conclusion that ownership in the marital residence was held in joint tenancy at the time of Alleman's death, so the court did not definitively resolve that question. We do note that the court observed in passing that, "to date, [Slaughter] has *received* . . . no payments from [Special Administrator] as the executor of [Alleman's] estate." (Emphasis added.) If this issue arises again during further proceedings on remand, we again note the property division set forth in the Decree (including the award of the marital residence to Alleman) survived Alleman's death. *See Porenta v. Porenta*, 2017 UT 78, ¶¶ 18, 20, 416 P.3d 487. And we further note that it's settled in Utah that "one party to a contract cannot by willful act or omission make it impossible or difficult for the other to perform and then invoke the other's non-performance as a defense." *Tooele Assocs. Ltd. P'ship v. Tooele City*, 2012 UT App 214, ¶ 31, 284 P.3d 709 (quotation simplified). Thus, insofar as it seems undisputed that Special Administrator had been properly appointed to represent Alleman's estate, Slaughter would not be able to avoid complying with her obligations by refusing to accept an otherwise valid tender of the $200,000.

Because we have now reversed the summary judgment decision that this award was based on, we reverse the attorney fees award as well.[7]

---

7. The parties have disputed whether our review of the attorney fees award would be proper under the petition for extraordinary relief, the direct appeal, both, or neither. We need not definitively resolve that question. As discussed, we have reversed the summary judgment ruling through the petition for extraordinary relief, and the attorney fees ruling was expressly based on the summary judgment ruling. If it were true that Special Administrator is not entitled to directly appeal the attorney fees award, he would then be entitled to seek extraordinary relief because no other plain or adequate remedy would be available.

Also, as a separate matter, we note that we're somewhat puzzled by the district court's decision to award these fees, at least on the rationale given and the procedural posture of this case. As indicated, the district court chose to rule on the summary judgment motion before it ruled on the motion to substitute. And when it finally did, it denied the motion to substitute. Thus, in the attorney fees ruling, the district court awarded prevailing party attorney fees against an entity that, in the court's view, was not and never had been a party. Neither the district court nor Slaughter have pointed to any authority allowing a court to award prevailing party attorney fees against a non-party. *Cf. Nielsen v. Cronquist*, 2026 UT App 65, ¶ 52, – P.3d – (noting that a court cannot "award[] relief to a non-party over whom it ha[s] no jurisdiction"); *Openshaw v. Openshaw*, 12 P.2d 364, 365 (Utah 1932) (holding that a judgment "in favor of a person who is not a party to the action or proceeding is void because the court has no jurisdiction to make it").

In expressing this concern, we again recognize the procedural oddity of how the district court treated Special Administrator in the various proceedings. The court considered

(continued…)

B.      Motion to Substitute

¶42      As noted, after the court granted Slaughter's motion for summary judgment, it ruled that the motion to substitute was "now moot." This seems to have been based on the court's conclusion that the marital residence belonged to Slaughter and was thus "beyond the estate of . . . Alleman." Because we have now reversed the summary judgment ruling, we also reverse the denial of the motion to substitute, insofar as that denial was predicated on the summary judgment ruling.

¶43      We note that in the briefing and arguments on appeal, the parties have gone further and disputed whether substitution would be proper under rule 25 of the Utah Rules of Civil Procedure under the facts and circumstances of this case. But we have no ruling from the district court on this substantive question, and we have no need to resolve that dispute here. Instead, having reversed the underlying summary judgment ruling, we remand this case with directions for the district court to determine in the first instance whether substitution is warranted under rule 25 and the facts of this case.

---

and ruled on various motions filed by Special Administrator in this case, faulted Special Administrator for not filing an opposition to Slaughter's summary judgment motion or seeking a hearing on it, and awarded prevailing party attorney fees against Special Administrator. And yet the court did all this before ruling on Special Administrator's motion to substitute, and when it finally considered that motion, the court denied it. On remand, the district court should first determine whether Special Administrator is a proper party to this case, and it should only allow Special Administrator to participate if it grants the motion to substitute.

CONCLUSION

¶44 For the reasons set forth above, we grant the petition for extraordinary relief and reverse the district court's decisions granting Slaughter's motion for summary judgment, awarding attorney fees to Slaughter, and denying Special Administrator's motion to substitute as being moot. We remand this case for further proceedings consistent with this opinion.[8]

--------

8. Special Administrator has requested an award of attorney fees and costs pursuant to Utah Code section 81-1-203(2). As noted above, that statute provides that "[i]n an action to enforce an order of . . . division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense." Utah Code § 81-1-203(2) (emphasis added). But the district court did not award fees to Special Administrator below—and, indeed, the district court did not even recognize Special Administrator as a party. Special Administrator has not pointed to any authority allowing us to award fees under this provision in the first instance, let alone authority permitting us to award fees to an entity that was not afforded party status below (even if that entity has prevailed in an initial appeal). In these fairly unique circumstances, we decline to award fees at this time, but we leave open Special Administrator's ability to later request attorney fees—including fees incurred in pursuing this appeal—during future proceedings in this case.